ST. LOUIS TRUST CO. et al. v. RILEY.

(Circuit Court of Appeals, Eighth Circuit. September 30, 1895.)

No. 607.

STREET RAILWAYS—MORTGAGE FORECLOSURES AND RECEIVERS—PRIORITIES—DAMAGES FOR NEGLIGENCE.

A claim for damages for personal injuries, caused by the negligence of a street-railway company five months before the appointment of a receiver in mortgage foreclosure proceedings, is not entitled to priority of payment over the mortgage debt out of the earnings accruing during the receivership. Such a claim is not based upon any considerations inuring to the benefit of the mortgage security, or tending to keep the road a going concern.

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

This was an intervening petition, filed by W. H. H. Riley, by his next friend, C. C. Riley, in the consolidated suit of the St. Louis Trust Company against the Capital Street-Railway Company, and the Atlantic Trust Company against the City Electric Street-Railway Company, to procure payment out of the earnings of the defendant railway companies of a judgment in the sum of $5,000, recovered against them in an action for personal injuries. The court below held that this claim was entitled to be preferred in payment from the earnings of the property over the lien of the mortgage debt. The two trust companies and the receivers of the roads, S. W. Fordyce and Allen N. Johnson, thereupon appealed to this court.

U. M. Rose, W. E. Hemingway, and G. B. Rose, filed brief for appellants.

William G. Whipple, filed brief for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. Is a claim for damages caused by the negligence of a street-railway company, a mortgagor, five months before a receiver was appointed in a suit to foreclose a mortgage upon its property and income, entitled to be preferred to the mortgage debt in payment out of the earnings of the railroad during the receivership? This is the question presented in this case. It arises in this way. The Capital Street-Railway Company, a corporation, which owned and operated a street railway in Little Rock, in the state of Arkansas, mortgaged its property, franchises, and income on April 2, 1890, to secure the payment of certain bonds it issued. On April 1, 1893, it made default in the payment of interest on these bonds, and on April 19, 1893, upon a proper bill for the foreclosure of the mortgage, a receiver of its property and income was appointed by the court below, and that court subsequently appointed a coreceiver. This corporation had, on March 3, 1891, leased its railroad to the City Electric Street-Railway Company, a corporation, which thereafter operated the railway under the lease. On December 1, 1891, the latter company mortgaged its property, franchises, and income to secure the payment of certain bonds which it

issued.    On June 1, 1893, it made default in the payment of interest on these bonds, and on a bill for the foreclosure of this mortgage the same court directed the receivers of the Capital Street-Railway Company to hold the property and income of the electric company under this bill.    In December, 1892, $9,000 was paid by the electric railway company on the interest secured by its mortgage.    On October 31, 1892, W. H. H. Riley, the appellee, was injured by the negligence of a motorman of the electric company in operating his car, and on June 19, 1894, he recovered a judgment for $5,000 on account of this negligence against both these corporations.    On an intervening petition in the foreclosure suits, and upon the answers of the mortgagees, which disclosed the foregoing facts, the court below held that the claim of the appellee upon the earnings of the property of the railway companies during the receivership was superior to that of the mortgagees, and ordered the receivers to pay it in preference to the mortgage debts.    This decision and order are assigned as error.

The proposition that the negligence of a mortgagor may create a claim, and secure that claim by an equitable right to its property and income superior to the lien of a mortgage of the same property and income which it made and recorded years before, is not without interest to those who are accustomed to uphold the obligations of contracts and the validity of contract rights.    The counsel for the appellee argues that damages for the negligence of a railroad company are necessary expenses of the operation of its railroad, and rests his proposition chiefly upon the following decisions of the supreme court, and particularly upon this quotation from the opinion delivered by Chief Justice Waite in Fosdick v. Schall, 99 U. S. 235, 252, 253:

"When [railroad] companies become pecuniarily embarrassed, it frequently happens that debts for labor, supplies, equipment, and improvements are permitted to accumulate, in order that bonded interest may be paid, and a disastrous foreclosure postponed, if not altogether avoided.    In this way the daily and monthly earnings, which ordinarily should go to pay the daily and monthly expenses, are kept from them to whom in equity they belong, and used to pay the mortgage debt.    The income out of which the mortgage is to be paid is the net income obtained by deducting from the gross earnings what is required for necessary operating and managing expenses, proper equipment, and useful improvements.    Every railroad mortgagee, in accepting his security, impliedly agrees that the current debts, made in the ordinary course of business, shall be paid from the current receipts, before he has any claim upon the income.    If, for the convenience of the moment, something is taken from what may not improperly be called the current debt fund, and put into that which belongs to the mortgage creditors, it certainly is not inequitable for the court, when asked by the mortgagees to take possession of the income and hold it for their benefit, to require as a condition of such an order that what is due from the earnings to the current debt shall be paid by the court from the future current receipts, before anything derived from that source goes to the mortgagees.    In this way it will only do what, if a receiver should not be appointed, the company ought itself to do.    For, even though the mortgage may, in terms, give a lien upon the profits and income, until possession of the mortgaged premises is actually taken, or something equivalent done, the whole earnings belong to the company, and are subject to its control.    *    *    *    We think also, that if no such order is made when the receiver is appointed, and it

appears in the progress of the cause that bonded interest has been paid, additional equipment provided, or lasting and valuable improvements made out of earnings, which ought in equity to have been employed to keep down debts for labor, supplies, and the like, it is within the power of the court to use the income of the receivership to discharge obligations, which, but for the diversion of funds, would have been paid in the ordinary course of business. This, not because the creditors, to whom such debts are due, have in law a lien upon the mortgaged property or the income, but because, in a sense, the officers of the company are trustees of the earnings for the benefit of the different classes of creditors and the stockholders; and if they give to one class of creditors that which properly belongs to another the court may, upon an adjustment of the accounts, so use the income which comes into its own hands as, if practicable, to restore the parties to their original equitable rights."

It is an interesting fact that these remarks of Chief Justice Waite, upon which courts are constantly urged to base orders for the preference of unsecured to secured creditors in the distribution of the incomes earned during receiverships, and of the proceeds of foreclosure sales, did not lead to the preference of any such claim in that case. The decision in Fosdick v. Schall was that a claim of the vendor of cars, which had subsequently reclaimed them under its contract, for their rent for six months immediately prior to the receivership, which was by the contract to be paid as a part of the purchase price of the cars, had no equitable claim upon the proceeds of the mortgaged property superior to that of the mortgage bondholders, and the decree of the circuit court which gave it such a preference was reversed. Page 255.

In Fosdick v. Car Co., Id. 256, the supreme court held that the claim of a vendor of cars upon the proceeds of the foreclosure sale was superior to that of a mortgagee, where the cars had been sold under the foreclosure, and the mortgagee had thus received the benefit of their value.

In Huidekoper v. Locomotive Works, Id. 258, an order directing the payment, in preference to the mortgage debt, of an amount found due on account of the purchase of locomotives that had been used by the railway company before the receivership, but had afterwards been reclaimed by the vendor, was reversed by the supreme court.

In Hale v. Frost, Id. 389, 392, that court held that a claim for current supplies, furnished to the machinery department of a railroad company just preceding the receivership, was entitled to a preference over the mortgage debt in payment out of the income earned during the receivership, but that a claim for material for construction purposes was entitled to no such preference.

In Miltenberger v. Railway Co., 106 U. S. 286, 308, 311, 1 Sup. Ct. 140, the supreme court sustained a decree which directed the receivers operating the mortgaged property to pay, out of the proceeds of its sale, the arrears due for operating expenses for a period not exceeding 90 days prior to the appointment of a receiver, and an amount not exceeding $10,000, to several connecting lines of railroad in settlement of ticket and freight balances, and for materials and repairs, that had accrued in part more than 90 days before the bill for foreclosure was filed.

In Trust Co. v. Souther, 107 U. S. 591, 593, 595, 2 Sup. Ct. 295, it was held that the court appointing a receiver might properly order him, before paying the mortgage debt, to pay out of the proceeds of the mortgaged property all amounts owing by the railroad company for labor or supplies that accrued in the operation and maintenance of the railroad within six months prior to the appointment of the receiver, in a case in which the receiver had used the income in making permanent repairs and improvements upon the property, instead of discharging these claims.

In Burnham v. Bowen, 111 U. S. 776, 783, 4 Sup. Ct. 675, the decision was that, in a case in which the income of the receivership had been diverted to pay for the right of way, the court might charge a claim for fuel necessarily furnished to and used by the railroad company in operating its railroad within 12 months prior to the receivership upon the income or proceeds of the mortgaged property in preference to the mortgage debt; but Chief Justice Waite added:

"We do not now hold, any more than we did in Fosdick v. Schall, or Huidekoper v. Locomotive Works, 99 U. S. 258, 260, that the income of a railroad in the hands of a receiver, for the benefit of mortgage creditors who have a lien upon it under their mortgage, can be taken away from them, and used to pay the general creditors of the road. All we then decided, and all we now decide, is that, if current earnings are used for the benefit of mortgage creditors before current expenses are paid, the mortgage security is chargeable in equity with the restoration of the fund which has been thus improperly applied to their use."

In Union Trust Co. v. Illinois M. Ry. Co., 117 U. S. 434, 6 Sup. Ct. 809, it was held that the wages of employés for a limited time before the receivership might be preferred to the mortgage bondholders in the distribution of the proceeds of the mortgaged property.

In Porter v. Steel Co., 120 U. S. 649, 671, 7 Sup. Ct. 1206, the decision was that claims for the construction of a railroad were entitled to no lien upon the proceeds of the property of the railroad company superior to that of a prior recorded mortgage.

In Penn v. Calhoun, 121 U. S. 251, 7 Sup. Ct. 906, a claim of a bank for money which was borrowed and used by the mortgagor to pay current expenses and pressing debts, shortly before the foreclosure, was refused a preference in payment over the mortgage debt.

In Trust Co. v. Morrison, 125 U. S. 591, 612, 8 Sup. Ct. 1004, a preference in the distribution of the proceeds of the sale of mortgaged property was allowed to a surety, who had executed a bond for an injunction that enabled the railroad company to prevent the sale of its rolling stock on execution, two years and ten months before the receiver was appointed; but Mr. Justice Bradley in the opinion quoted the remark of Chief Justice Waite in Burnham v. Bowen, which appears above, and declared that it was not the intention of the court to decide anything in conflict with that declaration.

In St. Louis, A. & T. H. R. Co. v. Cleveland, C., C. & I. Ry. Co., 125 U. S. 658, 678, 8 Sup. Ct. 1011, the supreme court refused to make the amount due for the rental of track used by the mortgagor before the appointment of the receiver a preferred claim to that of the bondholders upon the proceeds of the mortgaged property. In the opin-

ion Mr. Justice Matthews thus enumerates the claims that may be preferred in the distribution of the income:

"It is undoubtedly true that operating expenses, debts due to connecting lines growing out of an interchange of business, and debts due for the use and occupation of leased lines are chargeable upon gross income before that net revenue arises which constitutes the fund applicable to the payment of the interest on the mortgage bonds." Page 673, 125 U. S., and page 1011, 8 Sup. Ct.

In Railroad Co. v. Hamilton, 134 U. S. 296, 301, 10 Sup. Ct. 546, it was held that one who had constructed a dock upon the land of the railroad company at its instance, after the execution and recording of its mortgage, had no equitable claim superior to that of the mortgage bondholders on the property or its proceeds.

In Kneeland v. Trust Co., 136 U. S. 89, 98, 10 Sup. Ct. 950, the supreme court refused to prefer to the mortgage debt a claim for the rental of rolling stock for the three months immediately prior to the filing of the bill for foreclosure, in the distribution of the proceeds of the sale of the property, although the rolling stock was used during that time by a receiver of the railroad company appointed on a creditors' bill.

In Morgan's L. & T. R. & S. S. Co. v. Texas Cent. Ry. Co., 137 U. S. 171, 198, 11 Sup. Ct. 61, that court held that a claim for money loaned and used to pay operating expenses and interest and to keep the company a going concern was entitled to no preference in payment out of the income or proceeds of the mortgaged property over the mortgage debt.

In Railroad Co. v. Wilson, 138 U. S. 501, 508, 11 Sup. Ct. 405, it was held that the claim of an attorney for services that inured to the benefit of the mortgagee was entitled to a preference over the claim of the latter in payment from the proceeds of the foreclosure sale, but that a claim for services that did not inure to the benefit of the mortgagee was entitled to no such preference.

In Thomas v. Car Co., 149 U. S. 95, 110, 112, 13 Sup. Ct. 824, a preference in the distribution of the proceeds of a mortgaged railroad was denied to a claim for the use of cars for six months immediately prior to the receivership.

From this brief review of the decisions of the supreme court bearing upon this question, we think these propositions may properly be deduced:

First. There are certain claims against a mortgaged railroad company, accruing before the appointment of a receiver, which are entitled to a preference over a prior mortgage debt in payment out of the earnings of the railroad during the receivership and out of the proceeds of the sale of its property.

Second. It is an indispensable element of every such claim that it is founded upon property furnished or services rendered to the mortgagor which either preserved or enhanced the value of the security of the mortgage debt, and thereby inured to the benefit of the mortgagee.

Third. Claims of this character have been given a preference over the mortgage debt by these decisions on one of two grounds,—either

on the ground that the mortgage is a lien on the net, and not on the gross, income of the railway company, and where that part of the income that is applicable to the payment of current expenses of operation, proper equipment, and necessary improvements has been diverted to pay interest on the mortgage debt or to otherwise benefit the security, and this diversion has left claims for these expenses unpaid, it is the province and duty of the chancellor to restore the diverted fund by taking an equal amount from the earnings of the railway company during the receivership, and applying it to the payment of these claims in preference to the mortgage debt (Fosdick v. Schall, Burnham v. Bowen, St. Louis, A. & T. H. R. Co. v. Cleveland, C., C. & I. Ry. Co., Railroad Co. v. Hamilton, Morgan's L. & T. R. & S. S. Co. v. Texas Cent. Ry. Co., supra); or on the ground that the payment of the claims is necessary to preserve the mortgaged railroad, and to keep it a going concern. It is indispensable that the operation of a railroad be uninterrupted in order that the travel and traffic of the public may be accommodated, and in order that the franchises of the railroad company may be preserved from forfeiture. Hence the wages of employés, who might otherwise cease from their work, the amounts due to connecting lines of railroad that might otherwise cease their business relations with the managers of the mortgaged property, and the claims for supplies and materials necessary to keep the mortgaged railroad a going concern, may, in proper cases, be paid out of the earnings during the receivership, or out of the proceeds of the sale of the mortgaged property, in preference to the mortgage debt. Miltenberger v. Railway Co., Trust Co. v. Souther, Union Trust Co. v. Illinois M. Ry. Co., supra. But a claim for damages for the negligence of the mortgagor lacks the indispensable element of a preferential claim. It is not based upon any consideration that inures to the benefit of the mortgage security. Wages, traffic balances, and supplies produce or increase income, and preserve the mortgaged property. Repairs and improvements increase the value of the security of the bondholders. But the negligence of the mortgagor neither produces an income nor enhances the value of the property. The wages, traffic balances, and claims for materials and supplies accrue under and pursuant to the contract between the mortgagor and mortgagee that the former will properly operate the railroad. The damages for negligence accrue in violation of that contract, and for a breach of the duty of the mortgagor to operate the railroad carefully. Many preferential claims are for property or services that were necessary to make or keep the railroad a going concern, necessary to its operation. The negligence that is the foundation of this claim did not tend to keep the railroad in operation, but, if repeated and continued, would inevitably stop it. It was not necessary, but was deleterious, to its operation. For these reasons this claim for damages cannot, in our opinion, be allowed a preference over the mortgage debt in payment out of the income earned by the receivers appointed under the bills for the foreclosure of these mortgages.

The orders appointing these receivers did not require them to pay claims of the character of that which we have been considering out

of the income or proceeds of the mortgaged property in preference to the mortgage debts. The cases cited by counsel for appellee in which such an order was made do not rule this case. Dow v. Railroad Co., 20 Fed. 260; Central Trust Co. v. Texas & St. L. Ry. Co., 22 Fed. 135.

There is a statute in Arkansas which provides in terms that all persons injured by any railroad through actionable negligence shall have a lien on the railroad and appurtenances paramount to that of all other persons interested in it, whether their interest is prior in time to the injury or not. Sand. & H. Dig. Ark. § 6251. But we have not considered that statute, or its legal effect, because at the final hearing in the court below counsel for the appellee stated that he did not rely upon it further than to show the policy of the state in that regard, and the circuit court evidently did not consider it.

The order appealed from must be reversed, with costs, and it is so ordered.