FOREMAN v. CENTRAL TRUST CO. OF NEW YORK et al.

(Circuit Court of Appeals, Fifth Circuit. January 14, 1896.)

No. 429.

1. RAILROAD RECEIVERSHIPS—LIENS—DAMAGE—CLAIMS.

In 1888 the T. Ry. Co. mortgaged its property to secure an issue of bonds. In September, 1889, a receiver of the property of the corporation was appointed by a state court, in quo warranto proceedings for the forfeiture of the charter. While the railroad was in the hands of this receiver, one F., a passenger, suffered a personal injury. In October, 1889, the order appointing the receiver was vacated, as improvidently made, and the property was ordered to be returned to the company, and made chargeable with all expenses and liabilities of the receiver, as a lien upon such property. In 1890 F. sued the railway company and the former receiver in a state court to recover damages for his injury. In 1891 a suit for the foreclosure of the mortgage on the railroad was begun, in a federal court, and a receiver appointed. This receiver was made a party to F.'s suit in the state court, but without leave of the federal court, and appeared and answered. Judgment was rendered for F. against the railway company and receiver, which judgment was declared to be a lien on the property of the railway company in the hands of the receiver. F. then intervened in the foreclosure suit, to obtain payment of this judgment out of the corpus of the property, if necessary, in preference to the mortgage. *Held,* that F.'s claim for damages did not, by virtue of the decree vacating the receivership in the quo warranto proceedings, or otherwise, become a lien on the railway company's property superior to that of the mortgage previously executed.

2. SAME—TEXAS RECEIVERS ACT.

*Held,* further, that while it did not appear that F.'s suit in the state court was one to which the receiver could, under the act of congress of August 13, 1888, be made a party, without leave, if he could for any purpose be so made a party, the court was not authorized, by the Texas receivers act (Rev. St. Tex. art. 1466 et seq.), or otherwise, to award F. a lien superior to that of the mortgage, which was executed before the passage of the receivers act.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

K. R. Craig, for appellant.

J. A. Baker, Jr., and R. S. Lovett, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and BOARMAN, District Judge.

BOARMAN, District Judge. On August 30, 1888, the Texas Trunk Railway Company executed to the Central Trust Company of New York, as trustee, a mortgage of all its property, rights, and franchises to secure an issue of $1,000,000 of bonds, with interest payable semiannually. On the 4th of September, 1891, the said railway company having defaulted in payment of interest on its bonds, the Central Trust Company, trustee, filed in the United States circuit court for the Northern district of Texas a bill for the foreclosure of the said mortgage, and thereupon a receiver, Charles Dillingham, was appointed, and the court continued to administer the property, through him and his successors in office, until February 25, 1895, when a final decree of foreclosure was made, decreeing a sale and distributing the proceeds thereof. On September 25, 1889, John C. Traylor, in a quo warranto proceeding instituted by the state of Texas, in the courts thereof, against the Texas Trunk Railway Company, to forfeit the charter, was appointed receiver. On the 5th day of October, 1889, Joseph Foreman, the appellant herein, while traveling as a passenger on the said trunk railway, received a personal injury. On the 26th of October, 1889, on further prosecution of the quo warranto suit, at the instance of defendants, the order appointing John Traylor receiver was vacated by decree of the said state court. In the vacating decree the court held that the appointment of Traylor was not void, but that it was improvidently made. No sale of said property having been made, the court ordered that the same, in the hands of the said Traylor, receiver, should be returned to the said company, and shall be chargeable with all proper expenses and lawful liabilities incurred by said receiver in operating the said railroad. It was ordered, further, that "the charges upon the property in the hands of said receiver are hereby made a lien upon said property, and the possession of defendant, restored by this order, is subject to all the said charges." The appointment having been vacated, the property, on 26th of October, 1889, was all turned back to the said company. On the 18th of October, 1890, Joseph Foreman, the appellant herein, filed his suit in the state court against the said railway company and John Traylor, as receiver, for the recovery of damages against said company for his personal injuries, received as before stated. On the ——— of January, 1892, appellant caused Charles Dillingham to be made a party to his said suit in the state court. In June, 1892, Dillingham, appearing as a defendant, pleaded in this official capacity as receiver in said cause; and the said cause, having been tried on the 20th of February, 1893, resulted in a judgment for Foreman in the sum of $3,500, with interest, against the said Texas Trunk Railway Company and against Charles Dillingham, receiver. It does not appear from the record that the United States circuit

court gave leave to Dillingham to become a defendant therein.    In the said judgment it was decreed "that the amount of the judgment shall, and the same does hereby, constitute a lien on all property of the defendant the Texas Trunk Railway Company, wheresoever the said property may be situated, and of whatsoever character it may be, and a lien is hereby decreed on all property of said railway that the defendant Dillingham took into his possession, as receiver aforesaid, and all property of said railway that thereafter may have come into the hands of such receiver." The court further ordered that, as the said property was in the hands of a receiver appointed by the United States circuit court for the Northern district of Texas, no execution or order of sale shall issue, pending the said receivership, therein.    Said judgment was never set aside or appealed from.

On the 24th of July, 1893, Joseph Foreman filed his plea of intervention, upon his said judgment, in the United States circuit court for the Northern district of Texas, where it was referred to a master, as it appears, on an agreed statement of facts.    Later, the special master reported in favor of the intervener, entitling him to recover $3,500 with interest, "and a lien for the payment thereof, superior to the lien of the Central Trust Company; and the master recommended that the receiver be directed to pay the said amount, out of such of the current earnings and revenues derived by him from the property of the defendant railway company, as may now or hereafter be in his possession, after the payment of all expenses necessary for the proper operation and maintenance of said property during his receivership, including all the expenses which have heretofore been or may hereafter be incurred by the receiver or allowed by the court as a prior lien upon said property, and if there be no such surplus earnings, then this claim is hereby declared a lien on all the property of the defendant railway company, prior to the lien of the claim of complainant herein, together with the costs of the intervention."    On hearing the master's report, the intervener excepted thereto, and prayed for, not only a prior lien on all the property of the said railway company, superior to the complainant's mortgage lien, but for a lien superior to all other subsequent liens and claims arising since the date of the accrual of appellant's claim, except the operating expenses and costs of this receivership and taxes.    The Central Trust Company also filed a series of exceptions, attacking Foreman's judgment, etc., in the state court. On the hearing of the master's report, contradictorily with the Central Trust Company, the circuit court directed that the said report should be changed and reformed so that Foreman shall be entitled to a decree against the said trunk railway company and Atkins, Dillingham's successor, as receiver, for the sum of $3,500, with interest, and the receiver shall pay said amount out of the current earnings and revenues derived by him from the operation of the railway, in custody of the court, as shall remain, if any, after the payment of all expenses for the proper operation and maintenance of said railway and property during this receivership, including all expenses and costs prior to other liens of complainant herein, together with

the costs of this intervener. From this decree, intervener, Foreman, now prosecutes his appeal to this court.

The appellant's counsel discusses, contradictorily with the appellees, the merits of the several exceptions filed, as it appears, in the court below; but there seems to be a difference of opinion between the counsel as to what disposition was made of the exceptions on the hearing. There is some contention, too, as to whether the transcript shows a correct copy of the final decree reforming the master's report. In consequence of such differences, the appellees, on the hearing in this court, filed a motion for writ of certiorari. An agreement between the counsel amending the record having been filed, the motion was not pressed. The amendments, together with the record, show enough, of the issuable matters of fact and law to enable us to satisfactorily dispose of appellant's objections to the final decree of the circuit court. Under the view we take of the issues, it is not necessary for us to decide the differences of counsel as to the disposition made of the exceptions, or to discuss the merits of them. The assignment of errors presented by the appellant, on behalf of his objections to the decree reforming the master's report, are, substantially, as follows: That the evidence upon which the report was founded shows that the appointment of Traylor, receiver, was legally made in the quo warranto proceedings in the state court; that Foreman's claim for damages, having accrued while Traylor was operating said railroad, constituted a part of the charges for operating his receivership; that by the operation of the final decree therein vacating the said receivership and returning all the property subjected thereto, without sale being made thereof, the claim of Foreman was preserved to him, as a lien, on the corpus of all the property which had been under Traylor's receivership; that the judgment which he finally obtained in the state court on his said claim, vested, and recognized in him, a lien on the corpus of said property superior to the mortgage and bondholders thereunder for any deficiency after exhausting the earnings. On this statement of issues, which we have summarized from the pleadings and evidence, the appellant contends, in behalf of his exceptions to the final decree reforming the master's report, for two propositions: First, that by the terms of the final decree of the state court, passed in the quo warranto proceedings against the said company, vacating the receivership of Traylor, his claim for damages, constituting, as it did, a part of the charges incurred in the operation of said receivership, having been vindicated by the said judgment, became a lien on the corpus of the property, which took effect at a period during the receivership of Traylor; second, that by the operation and the legal effect of the said judgment, under the statutes of Texas passed in March, 1889, anterior to the date on which his cause of action arose, known as article 1466 et seq., Rev. St. Tex., he became the beneficiary of a lien on the corpus of all the property which was in Traylor's hands at the time his cause of action accrued, superior to the lien of the bondholders in whose foreclosure suit he became an intervener.

In considering the merits of his first proposition, it will be seen that the quo warranto proceeding, instituted by the state of Texas in the state court thereof, was a suit at law, directed to the single purpose of having the company's charter forfeited to the state. Its corporate life—not its property, or liens thereon, or the equitable distribution of its earnings, assets, or its property—was put at issue therein; and the only parties to the same were the state, on the one hand, and the railway corporation, on the other. The receivership provided for in the said suit, whatever may have been the legal effect of the decree vacating the same, or of the orders or reservations provided for therein, in relation to the claim of the right of Foreman, was for the purpose, only, of having the receiver, Traylor, continue the operation of the railroad for the use of the company, pending the suit by the state to annul its charter. We conclude that it was the purpose of the state court to have the railroad operated only for the benefit of its owners, because the only orders passed in the quo warranto proceedings, so far as we are advised, were the orders providing for and vacating the receivership of Traylor. We are unable to find any rule in the equity jurisprudence of the state or federal decisions, to which appellant cites us, in his brief, to support the contention that Foreman's claim, under or by reason of the legal effect of the decree of the state court vacating Traylor's receivership, or in the provisions or orders, found therein, relating to or reserving in him any ultimate rights against the said company, should be allowed to take rank, as an equitable lien, superior to the lien vested in the appellee under a mortgage executed anterior to the period at which it may be conceded Foreman's cause of action for damages accrued. It is conceded appellees were not a party to the suit in which the vacating order was passed; and, so far as we are advised, the said trustee could have had no interest to protect in the issues, purpose, or proceedings in that suit, if it had been made a party thereto. It may be that Foreman's claim for damages constituted a lawful charge against the company, incurred during the operation of Traylor's receivership; but it will be noted that Traylor was continuing and carrying on the business of the railroad, for the benefit of its owners, when Foreman received his injuries. And his claim, when Dillingham was appointed receiver, some two years after the vacating order, to administer the company's property for the benefit of complainants in the foreclosure suit, was, at best, only an unpaid debt against the company, for antecedent or old operating expenses, the same as it might have been if no receiver had been operating the railroad when Foreman received his injuries. And it seems to us that no rank, preference, or lien, whatever may be the terms or purpose of the orders found in the vacating decree of the state court, was intended to be conferred or could have been conferred on Foreman's claim that would authorize it now to prejudice the lien of the bondholders.

In considering appellant's second proposition, it will be seen that the mortgage in favor of the bondholders was executed and became operative August 30, 1888, and that the statute (article 1466 et seq.)

became a law March 19, 1889.   Dillingham does appear to have been brought into the state court, as a defendant, on the trial of Foreman's damage suit against the company; but appellee contends that no leave was given appellant, Foreman, by the United States circuit court, to have said Dillingham, as receiver, subjected to the jurisdiction of said state court, and that, his appearance as a defendant having been made without such leave of the court below, in which he was appointed receiver, the said judgment is without effect against the property of the railway company in his hands. See Barton v. Barbour, 104 U. S. 126;  Keen v. Breckenridge, 96 Ind. 69, and cases cited therein.   It is clear that, before the act of 1887–88, receivers could not be sued without leave of the court appointing them.   Section 3 of that act changed the law, as it existed then, only so far as to permit such suits against a receiver, without leave of the court, as are "in respect to any act or transaction of his in carrying on the business connected with the property" under his receivership.   It cannot be said that Foreman's suit against Dillingham was upon such a cause of action as brought him within the provisions of the act of 1887–88.   It has been held, in some cases, that such a leave is not necessary, to sue receivers away from the court appointing them, when the object of the suit is to recover only an ordinary judgment at law.   Beach, Rec. p. 599;  Railroad Co. v. Smith, 19 Kan. 225, and cases cited.   So it may be that the doctrine contended for by appellees' counsel should not, in this case, be allowed to go to the extent of annulling appellant's judgment against Dillingham, receiver, because it might be successfully claimed that, in Foreman's suit, the state court could not have, jurisdictionally, rendered anything in his favor beyond an ordinary judgment at law fixing the amount of his claim for damages, and that the said court, in allowing the lien, superior to the Central Trust Company's lien under the mortgage, found in his said judgment, was to that extent without jurisdiction.   But, conceding that the legal effect of his failure to secure the leave of the court below should be so limited, which is a matter we do not think it necessary now to determine, it is clear to us that the act of 1887–88 cannot be construed so as to forbid the circuit court, which was, at the time the said judgment was rendered, administering, through its receiver, for the benefit of the mortgage bondholders' lien, of which lien the said bondholders were and had been the beneficiaries, in equity, anterior to the time of the accrual of appellant's cause of action, "to subject such suit to the general equity jurisdiction of the court in which such receiver or manager was appointed so far as shall be necessary to the ends of justice."   In doing this, we cannot agree that Foreman's judgment, however valid it may be between all the parties thereto, can confer upon him any right or lien, enforceable in the equity courts of the United States, otherwise than in the line of and in conformity with the jurisprudence established in those courts,—all of which seems to be adverse to his first proposition.

Appellant, having recited at length article 1466 et seq., familiarly known as the "Texas Receivers Act," says that its provisions are

declaratory of equity rules already established in the federal court, and urges that the act was sufficient authority to authorize the state court to impose a lien in his favor on the corpus of all the said property in Dillingham's hands at the time of the said judgment in his favor, superior to the bondholders' lien, which, it is conceded, antedates the period of Foreman's cause of action against the said company and Traylor, receiver. A review of the decisions of the Texas courts since the passage of the receivers act will show, uniformly, that their conclusions, wherever they have considered matters and issues of law akin to the subject-matter of this suit, have been adverse to the contention of the appellant. In Giles v. Stanton, 86 Tex. 620, 26 S. W. 615, and Fordyce v. Du Bose, 87 Tex. 78, 26 S. W. 1050, it was held that the rights of the bondholders secured by a mortgage executed before the passage of the receivers act could not be affected or prejudiced by any lien which the court was authorized to impose under the provisions of the said act. It follows from what we have said that the decree of the circuit court should be affirmed.