VEATCH et al. v. AMERICAN LOAN & TRUST CO. et al.

(Circuit Court of Appeals, Eighth Circuit. December 6, 1897.)

No. 832.

1. RAILROADS—PETITION BY JUDGMENT CREDITORS AGAINST RECEIVER—PLEADING.

A complaint filed by a judgment creditor of a railroad company against a receiver operating its property, seeking to enforce payment of the judgment, which alleges the receipt by the receiver of earnings properly applicable thereto, need not aver that such earnings have not been disbursed; such fact, if it exists, being matter of defense.

2. SAME—SURPLUS EARNINGS IN HANDS OF RECEIVER—RIGHTS OF CREDITORS.

A mortgagee of a railroad has no preferred right, above that of a judgment creditor, to surplus earnings that have accumulated in the hands of a receiver, appointed at the instance of stockholders, prior to the filing of a bill for foreclosure.

Opinion on petition for rehearing. For former opinion, see 25 C. C. A. 39, 79 Fed. 471.

Before BREWER, Circuit Justice, and SANBORN and THAYER, Circuit Judges.

BREWER, Circuit Justice. A petition for a rehearing has been filed by the appellees in this case, in which they challenge so much of the ruling of this court as sustained the third cause of action stated in the intervening complaint of appellants. We shall not stop to restate the facts at length, but refer to the opinion heretofore filed for a full statement thereof. It is enough now to say that the appellants, on June 1, 1895, recovered judgments against the Union Pacific, Denver & Gulf Railway Company, in actions for torts. These torts took place on the 27th of July, 1893. On October 12, 1893, the railroad was taken possession of by the receivers of the Union Pacific Railway Company, that company having been theretofore operating the Union Pacific, Denver & Gulf Railroad. These receivers continued in possession until December 18, 1893, when a suit was begun by one of the stockholders of the Union Pacific, Denver & Gulf Railway Company. In that suit Frank Trumbull was appointed a receiver, and forthwith took possession of the property of the company, and continued operating the road, as such receiver, until October 31, 1894, when he was again appointed receiver of the same property in a suit brought by the American Loan & Trust Company, as trustee of certain mortgage bondholders. On the same

day an order was entered in the latter suit, consolidating it with the one brought by the stockholders. The allegations of the third cause of action are that while Trumbull, as receiver, was operating the road, under the appointment made in the stockholders' suit, he realized from the operation of the railroad a sum exceeding $400,000 in excess of taxes and operating expenses, and that this sum was now, or ought to be, in his possession as receiver. It was not affirmatively stated that such sum had not been paid out under orders of the court, nor that it had not been appropriated in payment of interest or principal of mortgage indebtedness, nor that it was not necessary therefor. The case is left on the simple showing of a tort prior to any receivership, of a judgment therefor after the receivership at the instance of the mortgagee, of an intervening receivership at the instance of a stockholder, and a net income during such receivership of more than enough to pay the judgment.

Involved in the matter thus called to our attention is a question of pleading. If the case is to be considered as though the other causes of action had been stricken out, then the question presented arises upon the facts as above stated. It is insisted, however, by the appellees, that in other portions of the complaint it is affirmatively shown that this accumulation of net income had been disposed of, and was no longer in the hands of the receiver. A distinct charge in one count of a complaint is not, however, to be overthrown by any mere inferences from matters alleged in other counts. It may be that, if such disposal was distinctly averred elsewhere in this complaint and in either of the other counts, we should be compelled to take notice of such averment, and consider whether the disposition thus shown was one which defeated appellants' right to recover; but, as we read the complaint, there is no such distinct averment, or at least none which shows a disposal by the receiver of the whole $400,000. It is in the light of this construction of the complaint that we proceed to reconsider the question presented upon the facts stated in the third cause of action.

It is true, the pleader does not negative any disposal of these earnings. He simply alleges that they are still in the hands of the receiver, or, if diverted by him, should in equity by restored to the income account. Was it necessary that he should negative the fact of disposal, or, in case other disposition had been made, show for what purpose it had been made, in order that the court might determine whether that disposition was rightful? We think not. It was enough for the pleader to aver the accumulation of this fund, and that it had passed into the hands of the present receiver. If he had disposed of it in such a way as to prevent its appropriation to the payment of appellants' claim, it was matter of defense, and to be by him set up. A plaintiff is not compelled to show that there cannot be any defense. It is enough for him to allege a state of facts which shows prima facie a right of recovery.

Turning now to the question of law, it will be noticed that a railroad receivership may be at the instance of the mortgagee, or of a judgment creditor, or of a stockholder. If at the instance of the

mortgagee, the income is impounded for its benefit; if of a judgment creditor, for the payment of his judgment. There is in the latter case an equitable levy on such income, and the mortgagee can claim no superior right thereto.

In Sage v. Railroad Co., 125 U. S. 361, 377, 379, 8 Sup. Ct. 887, 892, it was said:

"Had the receiver never been appointed, and had the railroad company operated the property just as the receiver did, producing the same amount of net earnings that were in the hands of the receiver, at the time of his discharge, would the trustees in the mortgage of May 1, 1877, have been entitled to demand that such earnings be paid over to them? Clearly not. 'It is well settled,' this court said in Dow v. Railroad Co., 124 U. S. 652, 654, 8 Sup. Ct. 673, 674, 'that the mortgagor of a railroad, even though the mortgage covers income, cannot be required to account to the mortgagee for earnings, while the property remains in his possession, until a demand has been made on him therefor, or for a surrender of the possession under the provisions of the mortgage. That is the effect of what was decided by this court in Railroad Co. v. Cowdrey, 11 Wall. 459, 483.' See, also, Gilman v. Telegraph Co., 91 U. S. 603; Bridge Co. v. Heidelbach, 94 U. S. 798; Kountze v. Hotel Co., 107 U. S. 378, 2 Sup. Ct. 911; Teal v. Walker, 111 U. S. 242, 250, 4 Sup. Ct. 420. * * * If the trustees, pending the receivership, had intervened and asked possession of the property, they might perhaps have been entitled, as against general creditors, to the income of the property thereafter accruing, upon the principles announced by this court in Dow v. Railroad Co. (as reorganized) 124 U. S. 652, 8 Sup. Ct. 673. But we do not perceive any legal ground upon which they are entitled to the net earnings of the property while it was in the hands of the receiver, in a suit instituted by a judgment creditor for the protection of his own interests, and not of the interests of the trustees, or of the bondholders, or of other creditors. His suit was, in effect, an equitable levy for his benefit, upon the net income of the property. Other creditors, who filed their claims, based upon judgments, gain nothing, as between themselves and Sage, by the fact that their judgments were rendered upon coupons, which were secured by lien upon the mortgaged property."

When, as in this case, a receiver is appointed at the instance of a stockholder, to whom does any surplus income belong, and what power of disposition of such income has either the receiver or the court appointing him? Before any receivership, and while the railroad property is being operated by the company mortgagor, it has all the rights of an owner in respect to the income. It may not, of course, convey away the fixed property so as to relieve it from the lien of the mortgage; but it may use the income in the payment of such debts as it sees fit, and if, in the absence of any special statute, it elects to pay a general creditor, or one who has simply a claim for damages on account of a tort, instead of paying interest or principal of its mortgage debt, the mortgagee has no recourse against the party thus receiving payment to compel reimbursement. In other words, the mortgagor's power over the income is the same as though there were no mortgage debt. It may prefer whatever creditor or claimant it pleases, and, provided it pays only a just debt or an honest claim, a secured creditor has no ground of action against the party thus paid. But this absolute freedom of disposition ceases when a receiver is appointed. The moment the court takes possession of property, certain equitable rights exist, which cannot be ignored by receiver or court. The property and the income received

therefrom is taken possession of by the court for the benefit, according to certain equitable rules, of all parties in interest. The mortgagee does not have those special rights to the income which it acquires when the receivership is at its instance. Not that its claims can be wholly ignored, but it can no longer insist that it has taken the special contract or statutory remedies for impounding the income. If, during this stockholders' receivership, there was, as alleged, accumulated $400,000 of net income above both operating expenses and taxes, and that sum passed into the hands of the receiver appointed under the mortgage foreclosure proceedings, it may have been disposed of by him for one of three purposes,—either in payment of claims accruing prior to the stockholders' receivership, for betterments on the property, or in payment of interest or principal of mortgage indebtedness. The mere fact that the same person is appointed receiver under the mortgage foreclosure as was receiver under the stockholders' bill does not make the two proceedings identical. The case is the same as though a distinct party was appointed receiver under the foreclosure proceedings, to whom the railroad property was turned over by the prior receiver. There would then remain the duty of the court in respect to the prior receivership to administer the accumulated earnings in the hands of that receiver, and it would not necessarily follow that it was the duty of the court to turn those funds over to the second receiver for the sole benefit of the mortgagee.

Doubtless, the circuit court in which the foreclosure proceedings were pending was fully aware of the disposition, if any, made of these surplus earnings, and very likely the conclusion to which it came in sustaining the demurrer to the entire intervening complaint may have been influenced by such knowledge; but the record before us does not advise as to these matters, and it does not seem wise for us to determine, in ignorance of the facts, whether the disposal which has been made (if any has been made) was such a disposal as precluded these appellants from any claim against the receiver. It is settled that a claim for damages for personal injuries, such as were the claims of these appellants, is not a preferential debt. Trust Co. v. Riley, 36 U. S. App. 100, 16 C. C. A. 610, and 70 Fed. 32. And, if these surplus earnings have been appropriated in payment of preferential debts, it would follow that these appellants have no claim on account thereof. It may be that they had, before these claims for torts had passed by judgment into debts, been appropriated by order of the court in payment of interest on underlying mortgages, or of past-due interest on the mortgage in suit. In that case it would be a question of doubt as to whether there were any equities in behalf of these appellants to compel the mortgagees to, in effect, pay back interest which they had already received. Or it may be that, the present earnings of the road having been sufficient to pay all accumulated interest, the receiver has, by direction of the court, expended these past earnings in betterments on the property; and then it would become a still more serious question whether, not being necessary for interest, the court has power to expend such sur-

plus earnings in mere improvements on the property mortgaged, leaving claims for torts unpaid.    Particularly is this true if it should turn out that there is to be no sale of this property under the foreclosure proceedings, and it is to be surrendered to a reorganized company.    But it hardly seems wise for us to speculate as to what the rights of the appellants might be under these various contingencies. We do not wish to be deciding moot cases.    We think, therefore, that the appellees should be called upon to answer this third cause of action, and make full disclosure of the facts, and then there will be no difficulty in applying the law to the facts, and determining what are appellants' rights.    The former decree of this court reversing the order and decree of the circuit court, and remanding the cause, with directions for further proceedings, is confirmed; and the stay of proceedings entered in this court on June 14, 1897, shall now cease, and a mandate will issue to the circuit court forthwith.