## BIRMINGHAM TRUST & SAVINGS CO. v. ATLANTA, B. & A. RY. CO.
### Intervention of HARDY.

(District Court, N. D. Georgia. March 8, 1923.)

1. **Receivers ⟪152—Judgment for tort antedating receivership has no preference against proceeds of mortgaged corpus.**

   A judgment for a liability in tort antedating a receivership has no preferential status as to the proceeds of the mortgaged corpus.

2. **Receivers ⟪152—Tort liability has no priority as to income before judgment and without showing of income.**

   Even if a judgment for a tort liability was superior to the legal lien of a mortgage against the income in the hands of the receiver, a claim of such lien cannot be sustained, where it was not reduced to judgment, so as to establish the lien before the receiver was appointed, and especially where there was no proof that there had been any net income earned by the receiver's operation of the railroad.

3. **Receivers ⟪152—Georgia statute gives tort claim no lien prior to final disposition, in absence of showing of net income.**

   Even if the liens given by Civ. Code Ga. 1910, §§ 2797, 2788, 2793, for claims for killing of live stock and other claims, and directing payment of such claims out of the income of the property in the hands of the receiver without awaiting final judgment in the case, applies to a receiver appointed by the federal court under Judicial Code, § 65 (Comp. St. § 1047), a claimant of damages for the killing of live stock is not entitled to payment of his claim before final disposition, in the absence of any showing that the receiver earned any net income by his operation of the property.

4. **Receivers ⟪78—Lien under Georgia statute must be enforced within 12 months.**

   Under Civ. Code Ga. 1910, § 3329, listing liens established in the state, including a lien in favor of owners of live stock killed by railroad, and section 3366 (2), requiring liens to be asserted within one year, a claimant against the receiver of a railroad for live stock killed by the operation of the railroad before the receivership loses any right to a lien by failure to assert it within 12 months.

5. **Liens ⟪22—Requirement of action within 12 months is condition of right.**

   The requirement of Civ. Code Ga. 1910, § 3366 (2), that action to enforce a lien shall be brought within 12 months, is not a limitation, but is a statutory condition of the existence of the lien, which must be complied with.

6. **Receivers ⟪78—Appointment of receiver does not extend time within which to enforce liens.**

   The appointment of a receiver for a railway does not extend the time within which an owner of live stock previously killed by the railroad must bring action to enforce his lien under Civ. Code Ga. 1910, § 3366 (2), though a modified procedure by intervention in the receivership proceedings would be sufficient compliance with the statute.

In Equity. Suit by the Birmingham Trust & Savings Company against the Atlanta, Birmingham & Atlantic Railway Company. On intervention of Neil Hardy to have his claim adjudged a lien, and paid from the earnings of the defendant, or from any moneys that may come into the receiver's hands, or from the corpus of the property. Claim adjudged to be without special lien, and required to await final disposition of the property.

⟪For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

287 F.—36

Moon & Parham, of La Grange, Ga., for intervener.

Spalding, McDougald & Sibley and Rosser, Slaton & Hopkins, all of Atlanta, Ga., for mortgagees.

Brandon & Hynds, of Atlanta, Ga., for Atlanta, B. & A. Ry. Co. and its receiver.

SIBLEY, District Judge. On October 25, 1920, Neil Hardy had live stock killed by a train of the Atlanta, Birmingham & Atlantic Railway Company. On February 25, 1921, at the instance of creditors, a receiver was appointed by this court for the company, who is still operating its railroads. Mortgagees for bondholders have intervened for foreclosure. On January 31, 1922, Hardy intervened to assert his claim for liquidation, and on the trial a sum of about $500 was adjudged him. He is now moving the court to fix the lien of his recovery and to order its payment, first, from the earnings of the railroad; second, from any moneys that may come into the receiver's hands; and, third, from the corpus of the property. The receiver and mortgagees deny the intervener's lien upon any of the property mentioned, and plead that, if there were any, it is barred by limitation.

[1] 1. The main corpus of the railroad property is unsold and that is not for present distribution. No reason has been urged why the mortgages upon it should be postponed to this claim. Slight portions of property not useful to the railroad have been sold, but the proceeds are charged with the lien of the mortgages. This judgment for a liability in tort antedating the receivership has no preferential status as to the proceeds of the mortgaged corpus. Foreman v. Central Trust Co. of New York, 71 Fed. 776, 18 C. C. A. 321.

[2] 2. As to income in the receiver's hands, reliance in argument was placed solely on Green v. Atlantic Coast Line Railroad Co., 97 Ga. 15, 24 S. E. 814, 33 L. R. A. 806, 54 Am. St. Rep. 379. In that case a judgment for a tort was rendered before the receiver was appointed, and its legal lien was held superior to the legal lien of a mortgage on the income, meaning, as explained on page 23 of 97 Ga., on page 817 of 24 S. E. (33 L. R. A. 806, 54 Am. St. Rep. 379), the net income. This ruling is based on the idea that the tort creditor was to be preferred because involuntarily such, and the court confesses, at the bottom of page 36 of 97 Ga., on page 821 of 24 S. E. (33 L. R. A. 806, 54 Am. St. Rep. 379), that it is contrary to all authority. It has since been suggested that the case might be upheld as rightly decided on its facts, regardless of its reasoning, because the mortgage was unauthorized as to income. See Georgia Southern & Florida Railroad Co. v. Barton, 101 Ga. 466, subhead 7, 28 S. E. 842. The Green Case, however, is inapplicable here, as Hardy had no lien by judgment before the receivership, and none arises from a judgment afterwards obtained (Lubroline Oil Co. v. Athens Savings Bank, 104 Ga. 376, 30 S. E. 409); nor, indeed, is it shown that the receiver, at any time either before or since the intervention of the mortgagees, has earned any net income. The federal authorities are clear that, as a matter of general equity, the mere tort creditor, though his claim arise within six months before the receivership, has no preference in the distribution of income

over mortgagees or other general creditors who intervene. St. Louis Trust Co. v. Riley, 70 Fed. 32, 16 C. C. A. 610, 30 L. R. A. 456, and cases cited. Much light is shed upon the questions involved by subsequent cases of Veatch v. American Loan & Trust Co., 84 Fed. 274, 28 C. C. A. 384; Atlantic Trust Co. v. Dana, 128 Fed. 209, 62 C. C. A. 657.

[3] 3. But there are Georgia statutes touching railroads to be considered which, since a receiver takes property subject to liens upon it, and because of Judicial Code, § 65 (Comp. St. § 1047), may be applicable to federal receivers. Acts 1876, p. 122 (Code, § 2797), fixes a lien on the gross income of railroads in the hands of receivers for claims for wages of employees, wood, cross-ties, and other material furnished which may be necessary for carrying on the business and keeping the property in repair, and for damages or loss of goods in transportation and for injuries to person and property. This, however, evidently refers to claims so arising after the receivership and has no application here. The same is true of Acts 1895, p. 103, amended by Acts 1896, p. 63 (Code, § 2788), as to the liability of receivers and trustees for injuries to employees and for damages to person or property and the lien fixed on gross income therefor. The lien of railroad employees for their wages, not exceeding $500, established by Acts 1893, p. 91 (Code, § 2793), with provision for payment by receivers, is not in controversy here. Acts 1894, p. 68 (Code, § 2795), however, asserts a lien "upon the property of the company for * * * supplies, material or other necessary articles furnished within six months preceding the institution of proceedings to enforce the same," and "for the amounts due * * * for damages for killing live stock" by its engines or cars, and directs that, when a railroad is put in the hands of a receiver by any court in this state, payments on account shall be made out of the income of the property available for that purpose, without awaiting final judgment in the case.

Supposing, without deciding, that the direction thus given by the Legislature primarily to its own courts as to the disposition of income ought to be observed by a federal court, it is to be noted in the first place that payment before final judgment is contemplated from income only, and not from corpus. In the next place, the income so to be used is only that which is "available for that purpose." This doubtless means, as to claims arising before the receivership, that out of the gross income must first be satisfied all claims against the receiver, which by acts first above alluded to, are made liens against the gross income, together with taxes and other liens which are superior. It is not contemplated that payments should disable the road to continue operation, for the purpose of many of the liens established is to enable it to operate notwithstanding mortgages, judgments or other liens older in time than the receivership. In the present case the pleadings make no mention of any income which is available, and it is known to the court from the receiver's reports, that operations on the whole have yielded no net income, and that even many tax liabilities remain unsatisfied. If, therefore, a statutory lien exists against income there is nothing

for it to operate on. If against the corpus, its consideration before sale and the raising of a fund for distribution is premature.

[4] 4. Moreover, the point of limitation, so called, seems well taken as against a statutory lien. As to the supplies and material and other necessary articles furnished a railroad, the act of 1894 expressly limits the lien to those furnished within six months preceding the institution of proceedings to enforce the same. This clearly indicates that proceedings to enforce, if not voluntarily paid, are contemplated, and also that the lien for the particular articles specified would endure only six months without such proceedings. The lien for live stock killed is not so expressly limited, though created in the same sentence. The Code of 1910, however, which is itself a single great statute (see Acts 1910, p. 48), in its chapter entitled "Liens Other Than Mortgages," and first section therein (section 3329), lists the liens established in the state, the thirteenth and last item being "liens in favor of railroad employees, owners of stock killed, and persons furnishing supplies to railroads." It then proceeds to define many of the liens and make general provisions for their enforcement. All liens, in the absence of other provisions, are to be asserted according to the requirements of Code, §§ 3365, 3353, as to realty, one of the requirements being the commencement of an action thereon within twelve months from the maturity of the claim, and in case of personalty—Code, § 3336 (2)—a similar requirement of proceedings instituted within one year. These railroad liens having no other provision for foreclosure must evidently be asserted under the sections referred to.

[5] The requirement of action within 12 months is really not a limitation; but a statutory condition of the existence of the lien which must be complied with. Exceptions to ordinary limitation periods, such as the right to renew within 6 months a suit originally brought in time, but dismissed, have no application to liens (Chamblee Lumber Co. v. Crichton, 136 Ga. 391, 71 S. E. 673; Walker v. Burt, 57 Ga. 20), no more than they have to the dormancy statute affecting judgments (Lewis v. Smith, 99 Ga. 603, 27 S. E. 162; Smith v. White, 63 Ga. 236).

[6] It may be objected, however, that in case of a receivership the foreclosure proceeding could not be instituted as provided by the Code. It may be true that, with the receiver in possession of the property upon which the lien is claimed, an application to his court would be necessary, by intervention or otherwise, and the proceeding might be modified in this respect, but that the lien should exist as against the receiver and the funds in his hands for a longer period than is permitted against the property when in the hands of the original debtor without any obligation to assert it is inconceivable. No reason is apparent why Hardy could not have intervened for the assertion of his claim within 12 months, instead of waiting 15 months, as he did do. This delay is held to be fatal to the assertion of any statutory lien against the corpus or the income of the railroad, did one otherwise exist.

It is therefore adjudged that the debt established in Neil Hardy's favor is without special lien or priority, and must await such recognition as it may be entitled to have in the final disposition of the property in the receiver's hands.