AMES et al. v. UNION PAC. RY. CO. et al.

(Circuit Court, D. Nebraska. March 27, 1896.)

1. RAILROADS — INTERCHANGED BUSINESS — ADJUSTMENT OF EARNINGS UNDER RECEIVERSHIP.

The K. Ry. Co., which formed a part of the U. P. System, was operated under contracts with the U. P. Ry. Co. and the G. Ry. Co., which also formed part of that system, by which contracts a share of the income from joint business, sufficient to pay its operating expenses and fixed charges, was guarantied to the K. Co., the effect of such contracts being to charge a large annual deficit to the U. P. and G. companies. In a suit brought

by stockholders of 'the U. P. Co., receivers of all the roads were appointed, who renounced these contracts, and divided the earnings of the roads on a mileage basis, resulting in a deficit for the K. Co., which was apportioned, by an order made December 20, 1894, to be paid in certain proportions by the U. P. Co., the G. Co., and the R. Co., another road in the U. P. System, the receivers being authorized to make such modifications in the division of revenues from interchanged business between the several roads as should be just. Immediately after the entry of such order, the bondholders of the G. Co. protested against it, and notified the receivers not to pay the proportion of the K. Co.'s deficiency, charged against the G. Co. Shortly after, the trustees under mortgages of the G. Co. and U. P. Co. brought suits to foreclose such mortgages and impound the earnings of the roads, and the same receivers were appointed in these suits. A similar suit was afterwards brought to foreclose the mortgage on the R. Co. and the same receivers appointed. The bondholders of the K. Co. were fully notified of all these proceedings, and in May, 1895, instituted a suit for the foreclosure of the mortgage on the K. Co., in which, in August, the same receivers were appointed. In this suit, in October, 1895, they filed a petition for a readjustment of the earnings of the K. Co. from interchanged business, upon which, after notice to and on agreement of all parties, an order was made making a new adjustment of such earnings after October 1, 1895. On May 1, 1895, the receivers had petitioned for the suspension of the order of December 20, 1894, as inapplicable to the situation resulting from the commencement of the foreclosure suits, and in February, 1895, the bondholders of the K. Co. had filed a petition for an order requiring the receivers to pay certain delinquent taxes on the K. Co.'s property out of the earnings of the other roads, according to the order of December 20, 1894. Such petitions having been referred to a master, who reported favorably upon the former and adversely upon the latter, the K. bondholders excepted to his report. *Held*, that such bondholders, having been fully advised that the order of December 20, 1894, was objected to and resisted by the other roads, the earnings of such roads having been impounded by the foreclosures, and the bondholders of the K. Co. not having acted promptly in taking possession of their own road under their mortgage, the order of December 20, 1894, did not foreclose the court or the lienholders upon the other lines from working out a fair and just division of the earnings from interchanged business, after the making of that order, and up to the commencement of the new adjustment already ordered to be applied after October 1, 1895, and it appearing that the latter adjustment was fair and just, while that of December 20th was not, it would be applied to the earnings between December 20, 1894, and October 1, 1895.

2. SAME—IMPOUNDING REVENUES.

*Held*, further, that the revenues impounded in the foreclosure suits upon the lines of the G. and other companies were not the gross revenues, but the net revenues, after deducting operating expenses and preferential claims, including the just shares of connecting roads in the earnings of interchanged business, and therefore that such companies could not insist that no part of their earnings, after commencement of the foreclosure suits, should be applied to the deficit in the earnings of the K. Co.

On exceptions of the bondholders of the Kansas City & Omaha Railroad Company to the report of the master upon the petition of said bondholders for an order directing the receivers to pay taxes. Also on exceptions of the bondholders of the Kansas City & Omaha Railroad Company to the report of the master upon the petition of the receivers for an order suspending the provisions of the order of December 20, 1894.

Parrish & Pendleton, for bondholders' committee.
Morris, Beckman & Marple, for interveners.
W. R. Kelly, for Union Pac. R. Co.

SANBORN, Circuit Judge. The Kansas City & Omaha Railroad Company (hereafter called the "Kansas Company") has three lines of railroad, which aggregate 193.68 miles. They are situated in the state of Nebraska, and are tributary to the railroad of the St. Joseph & Grand Island Railroad Company (hereafter called the "Grand Island Company"). The Grand Island Company has 251.06 miles of railroad, and, prior to the receiverships hereafter named, operated the railroads of the Kansas Company. The Omaha & Republican Valley Railway Company (hereafter called the "Valley Company") has 482.04 miles of railroad, situated in Kansas and Nebraska, and one of its lines connects with one of the lines of the Kansas Company. The Union Pacific Railway Company has 1,827.59 miles of railroad, and among these a main line of road extending from Council Bluffs, in Iowa, to Ogden, in the state of Utah; another from Kansas City, Mo., to Denver, in the state of Colorado. Prior to the receiverships of these roads, they were all operated by the Union Pacific Railway Company as a part of the Union Pacific System. The railroad of the Kansas Company was operated under a contract between that company and the Union Pacific Railway Company and the Grand Island Company to the effect that the two latter companies would give to the Kansas Company such a share of the revenues derived from the business which passed over any part of the railroad of the Kansas Company and some part of the Union Pacific system that its income would pay its operating expenses, the interest on its bonds, and other fixed charges. Bonds to the amount of $2,940,000 had been secured upon the property of this road by a first mortgage. In carrying out the traffic contract between these three companies the earnings from the joint business had, prior to the receivership, been divided on a mileage basis with the allowance to the Kansas Company of a minimum haul of 50 miles. The effect of this division had been that at the end of each year there was a large deficit charged against the Kansas Company, which was paid by the Union Pacific Company and the Grand Island Company, under the contract. On October 13, 1893, this court appointed receivers of the property of these three railroad companies, and of all the other railroad companies that constituted a part of the Union Pacific System, under a bill filed in this suit on behalf of certain stockholders of the Union Pacific Railway Company, for the purpose of preserving the vast property in the control of that company from disintegration and dissipation, at the suit of separate creditors, of marshaling its assets and liabilities, and of administering the trust which arose through the insolvency of the Union Pacific Railway Company and its constituent companies. These receivers, by direction of the court, renounced the traffic contract between the Kansas Company, the Grand Island Company, and the Union Pacific Company, and divided the earnings from the interchanged business between the Kansas Company and the other constituent lines of the Union Pacific System upon a mileage basis, with an allowance of a minimum haul of 50 miles to the Kansas Company, in the same way that these earnings had been divided prior to the receivership. The result of this division was that the expenses

of operating the railroads of the Kansas Company between October 13, 1893, and July 31, 1894, including the taxes for the year 1893, amounted to $40,851.40 more than its gross earnings during that period. On June 26, 1894, the receivers filed a petition in this court, in which they set forth the fact that the operation of the railroads of this company produced a continuing deficit, and prayed for the directions of this court as to whether or not they should continue to operate these railroads, and, if so, in what way, and from whose funds this deficit should be paid. Upon this petition the court issued an order that the petition be filed, that notice of its filing should be given to all the railroad companies in any way interested therein, and to the trustees of the several mortgages and trust instruments, securing debts owing by the defendants in this suit, among whom were the Grand Island Company, the Kansas Company, the Union Pacific Railway Company, and all the constituent companies of the Union Pacific System. That order further provided that any of these parties might intervene and answer the petition, and that it should be heard before the court on the 19th day of July, 1894. When the hearing came on, that portion of the petition which related to the Kansas Company was referred to a master, who, after hearing, reported that the Kansas City & Omaha Railroad Company should be operated by the receivers; that the deficiency resulting from its operation constituted a just charge upon the properties of the Grand Island Company, the Republican Valley Company, and Union Pacific Railway Company in the following proportions, to wit, 68 per cent. thereof upon the property of the Grand Island Company, 14 per cent. thereof upon the property of the Republican Valley Company, and 18 per cent. thereof upon the property of the Union Pacific Company. The Grand Island Company had mortgaged its railroads to secure bonds to the amount of $7,000,000, and Frederick P. Olcott and others, who constituted a committee of certain holders of these first mortgage bonds, excepted to this report. After hearing, these exceptions were overruled; and on December 20, 1894, the court ordered that the deficiency arising from the operation of the Kansas Company, together with such further deficiency as might result from the continued operation thereof after July, 1894, should be borne and paid by the receivers out of the revenues derived by them from the operation of the properties of the Grand Island Company, the Republican Valley Company, and the Union Pacific Railway Company, in the proportions stated in the report, and that the receivers should be, and they were, authorized and allowed to make such modifications in the division of revenues derived from interchanged traffic and in the routeing of business, as between the lines of the Kansas Company and those of the Grand Island Company and the other constituent lines of the Union Pacific System, as in the judgment of the receivers should be just and equitable as between said several lines. On December 29, 1895, the Central Trust Company of New York, as trustee for the first mortgage bondholders of the Grand Island Company, filed a bill in the usual form in this court for the foreclosure of the first mortgage upon the properties of that company, and

on August 26, 1895, the receivers herein were appointed receivers of that property under that bill. On January 21, 1895, F. Gordon Dexter and Oliver Ames, 2d, trustees under the first mortgage of the Union Pacific Railway Company, for $27,229,000, upon that line of railroad which extends from Omaha, Neb., to Ogden, in the state of Utah, filed in this court their bill to foreclose that mortgage, and prayed for the appointment of receivers thereunder. These receivers were thereafter appointed receivers under this bill. On May 29, 1895, Elias C. Benedict, Simon Wormser, Samuel L. Parish, and others, on their own behalf and on behalf of all others similarly situated, filed their bill against the Kansas Company to foreclose the first mortgage upon its property. This bill was in the usual form, save this: that it alleged that the complainants were bondholders under said mortgage, and that the trustee was so adversely interested that it could not act as complainant for the foreclosure of this mortgage. The same receivers were, under this bill, appointed by the court receivers of the property of the Kansas Company, which they had prior to that time been operating under the bill in the Ames suit. On August 15, 1895, the American Loan & Trust Company, the trustee in the first mortgage upon the property of the Republican Valley Company, filed its bill to foreclose certain mortgages covering that property, and the same receivers were appointed, pursuant to the prayer of that bill, and continued to operate the properties therein described. Immediately after the filing of the order of December 20, 1894, the committee of the holders of the bonds secured by the first mortgage of the Grand Island Company, notified the receivers herein that they must not pay that portion of the deficiency in the operation of the Kansas Company charged to the Grand Island Company in that order; that they intended to appeal therefrom; and that, if they paid it, they would be held personally responsible. After serving this notice, their trustee filed its bill, impounding the net earnings of that road, on December 29, 1895. At the time the order of December, 1894, was made there was due for taxes on the property of the Kansas Company for the year 1894 about $35,000, which would become delinquent on the 1st of February, 1895. Upon receiving this notice from the bondholders of the Grand Island Company, and upon the filing of the bill of their trustee for the foreclosure of their mortgage, the receivers declined to pay these taxes, and on February 23, 1895, Benedict and others, constituting a committee of the bondholders of the Kansas Company, filed a petition in this court, in which they prayed for an order upon the receivers to pay these taxes and charge them to the Grand Island Company, the Union Pacific Company, and the Republican Valley Company in the proportion specified in the order of December 20, 1894. The court referred this petition to the master, directed notice of its filing and the hearing upon it to be given to the defendants in this suit, and to the trustees under the various mortgages securing bonds upon their respective properties; and after a hearing the master reported that the receivers had not derived from the operation of the property of the Kansas Company sufficient funds to pay the taxes, nor sufficient to pay all the expenses of the operation

of the property; that there were no moneys in their hands which, could be applied to the payment of the taxes or to the payment of any deficit arising from the operation of the property of the Kansas Company; and he recommended that the prayer of the petition should be denied. The bondholders of the Kansas Company excepted to this portion of his report, and this is the first exception presented for our consideration.

On October 18, 1895, Benedict and others, the complainants in the bill for the foreclosure of the first mortgage upon the property of the Kansas Company, filed in that suit a petition, praying an order of the court, making a just and proper division of the rates and earnings of the Kansas road from interchanged business between that road and the railroads of the Union Pacific Railway Company, the St. Joseph & Grand Island Railroad Company, and the Republican Valley Company. The petition was referred to the master, with directions that notice thereof and of the hearing thereon should be given to these companies and to the trustees in the various mortgages secured upon their property. The Central Trust Company, the trustee under the first mortgage upon the Grand Island property, and the receivers herein, answered the petition. A hearing was had thereon before the master. The testimony before him on the part of all parties was without conflict, and it was to the effect that certain rules for the division of rates and earnings upon interchanged traffic, as between the property of the Kansas Company and the Grand Island Company, and as between the property of the Grand Island System, so called, and the properties of the Union Pacific System, were just and equitable, and that they ought to be applied to the division of all such earnings that had accrued after October 1, 1895. It, in effect, appears from the testimony that these rules for the division of the rates and earnings were practically agreed upon by the representatives of the various parties in interest at this hearing. The master accordingly reported this set of rules. No exception was taken to his report, and on December 11, 1895, this court ordered that these rules for the division of rates and earnings upon interchanged traffic between the properties of these various railroad companies should be applied by the receivers to the division of all such earnings that accrued subsequent to October 1, 1895. On May 23, 1895, the receivers filed in this court a petition for an order suspending the operation of the order of December 20, 1894. The court issued an order to the trustee under the first mortgage of the Grand Island Company, to the Grand Island Company, and to Benedict and others, complainants in the foreclosure suit against the Kansas Company, to show cause why the petition should not be granted, and referred the matter to the special master for a hearing. The committee of the bondholders of the Kansas Company answered the petition, and a hearing was had before the master, who reported that, by reason of the commencement and pendency of the various foreclosure suits against the property of these various railroad companies, the order of December 20, 1894, became inapplicable and inoperative, in so far as it directed the payment of continuing deficits resulting from the operation of the

property of the Kansas Company after the filing of the bill in the foreclosure upon the first mortgage against the property of the Grand Island Company, and that the receivers were, therefore, not warranted, after that date, in paying or attempting to pay these deficits from the Kansas Company out of the revenues of the Grand Island Company, or out of the revenues of any of the other companies against which it was charged by that order. Benedict and others, bondholders of the Kansas Company, have filed exceptions to this report, and these are also presented for consideration.

The exceptions to these two reports of the master present this question: Shall the $35,000 taxes for 1894, upon the property of the Kansas Company, and the deficit which resulted from operating it from the 1st of January, 1895, to the 1st of October, 1895, be paid out of the property of the Kansas Company, or out of the revenues or property of the Grand Island Company, the Republican Valley Company, and the Union Pacific Company? The reports of the master leave these taxes and this deficit upon the property of the Kansas Company. The order of December 20, 1894, if it is still applicable to this period, charges them upon the connecting companies. The bondholders of the Kansas Company insist that, as the order of December 20, 1894, had been made by this court, they had a right to rely upon its continuous enforcement, and that the court, the companies owning connecting roads, and those holding liens upon them, are estopped by that order, and bound to enforce it, until the 1st of October, 1895, when, by consent of the parties, the just and equitable rules for the division of the earnings upon interchanged business between these roads was put into effect. There might be force in this contention if the lines of railroad connecting with the property of the Kansas Company had remained in the hands of the receivers in the Ames suit, unaffected by the filing of bills of foreclosure and the impounding of their earnings thereby. But within 10 days after the order of December 20, 1894, was made, the trustee under the first mortgage of the Grand Island Company, against whose revenues 68 per cent. of this deficit and of these taxes was charged by the order of December 20, 1894, filed its bill of foreclosure, and impounded the revenues of the property of that company. The committee of the bondholders had notified the receivers that they would be held personally responsible if they paid this deficit out of the earnings of the Grand Island Company, which were thus impounded. It was evident to the receivers and to the court, and it was not unknown to the bondholders of the Kansas Company, that the purpose of the filing of this bill on behalf of this trustee was to present this question, and to insist that so large a portion of this deficit should not be charged against the revenues of that company. This was known to the bondholders of the Kansas Company, because as early as February 27, 1895, they filed in this court a petition praying that the receivers should be directed to pay the taxes of 1894, under the order of December 20th, and they took an order upon the trustee under the mortgage of the Grand Island Company, and upon various other parties, to show cause why the prayer of that petition should not be granted; and on April 5, 1895, the

receivers answered the petition, and set forth the facts relative to the action of the bondholders of the Grand Island Company. From the time they presented this petition they knew that the order of December 20th was not unquestionably in force, because they knew, if it had been so, the court would have directed the taxes to have been paid without a hearing before the master. The railroads of the Kansas Company were, during all this time, at the command of the bondholders. Their mortgage was in default. The operation of their roads was producing a deficit. They had the right to file their bill for the foreclosure of their mortgage, and to take and operate these railroads under a receiver for the benefit of these bondholders themselves. They took no action. They did not file their bill for a foreclosure of their mortgage until one of the last days of May, 1895, and never applied for the appointment of receivers thereunder until the last of August in that year. Under these circumstances, the order of December 20, 1894, does not, in my opinion, foreclose the court or the lienholders under the mortgages upon the lines of railroad connecting with those of the Kansas Company from working out a fair and just division of the revenues derived from business interchanged between these roads, and apportioning a just share thereof to the payment of the deficits and taxes under consideration. Moreover, it was the intent and purpose of the court that this should be done under that order. The object of the order was to provide for the deficit which had already arisen, and to empower the receivers, who were operating all these roads, to immediately establish a just division of the earnings upon interchanged business, and to so keep their accounts as to accomplish that division. After providing for the deficit that had already accrued and that which might accrue after July, 1894, until this action was taken, the order provided "that the receivers herein be, and they are hereby, authorized and allowed to make such modifications in the divisions of revenues derived from interchanged traffic and in the routeing of business, as between the lines of said Kansas City & Omaha Railroad Company and those of the St. Joseph & Grand Island Railroad Company and other railway lines in the receivership herein, as in the judgment of the said receivers shall be just and equitable as between said several lines." Thus the receivers were authorized by this very order to make a just division of these revenues. Certainly the court may do what it authorized its receivers to do when they have failed to accomplish the task assigned to them.

It is contended, on the other hand, that all the taxes upon the property of the Kansas Company for 1894, and the entire deficit, which resulted between January 1 and October 1, 1895, from the operation of the property of that company, and from the division of the earnings upon interchanged business upon a basis of mileage with an allowance of a minimum haul of 50 miles to that company, must be borne by the property of the Kansas Company, and that no part of the revenues which accrued to the Grand Island Company after the bill to foreclose the first mortgage upon its property was filed can be diverted to pay any portion of these taxes or this deficit, because the filing of that bill impounded all its earnings for the ben-

efit of the holders of its mortgage bonds. It is said that the revenues of the Union Pacific Company and of the Republican Valley Company are protected from this diversion in the same way by the filing of the respective bills of foreclosure against their property. But this position is equally untenable. The filing of a proper bill of foreclosure of a mortgage covering the income of a railroad company undoubtedly impounds the revenues of that company for the benefit of its mortgage bondholders, but it does not impound its gross revenue. It impounds only the net revenues that remain after the payment of the operating expenses of the railroad, and such preferential claims as may be allowed under the settled rules of the law. Trust Co. v. Riley, 16 C. C. A. 610, 614, 70 Fed. 32; St. Louis, A. & T. H. R. Co. v. Cleveland, C., C. & I. Ry. Co., 125 U. S. 658, 673, 678, 8 Sup. Ct. 1011. The payment to connecting lines of railroad of their just and equitable share of the earnings from interchanged business is one of the necessary expenses of operating a railroad. The result is that the revenues from business interchanged with other roads derived by a railroad company or its receiver after a bill for the foreclosure of a mortgage upon it has been filed may be and ought to be justly divided among the roads interchanging the business, and that portion of it which equitably belongs to other roads or their owners is not impounded by the foreclosure.

The question presented by these exceptions thus becomes, what proportion of the earnings between January 1 and October 1, 1895, from business interchanged between the railroads of the Kansas Company and the railroads of the Grand Island Company, the Republican Valley Company, and the Union Pacific Company justly and equitably belong to the Kansas Company? This question is not difficult of solution. It is clear from the traffic contract between these railroad companies prior to the receivership, from the testimony, and the findings of the master, which resulted in the order of December 20, 1894, and from the rules for the division of rates and earnings which were established and put in effect from October 1, 1895, without objection or exception on the part of any one of the parties in interest here, that a division of the earnings from interchanged business upon the basis of mileage, with an allowance of a minimum haul of 50 miles to the Kansas Company, is neither just nor equitable. There is no testimony, no act of any of the parties, no finding of the master, no record of any kind to support the view that such a division of the interchanged business would be right. It is equally clear, from an examination of the evidence in this case, that the charge of the taxes of 1894 and the deficit during this period against the revenues and property of the Grand Island, Republican Valley, and Union Pacific Companies in the proportion stated in the order of December 20, 1894, would place upon them an unjust and unequal burden. A single illustration is sufficient to demonstrate this proposition. The gross amount earned by the roads of the Kansas Company and the roads of the Grand Island Company from passenger and freight traffic originating or terminating on the roads of either company between July 31, 1894, and June 1, 1895, was $70,385.28. Of this amount the Kansas Company re-

ceived $17,865.42 and the Grand Island Company $52,519.86. The deficit in the operating expenses of the Kansas Company during this period was $28,181, and the taxes of 1894, delinquent in February, 1895, were $35,240.17, making together $63,421.17. If the Grand Island Company should pay, pursuant to the order of December 20, 1894, 68 per cent. of this amount, it would pay to the Kansas Company $43,126.66, and the latter company would thus derive the sum of $46,126.66 and $17,865.42, or $60,992.08 from this interchanged business, the total earnings of which were only $70,385.28. The Grand Island Company would receive under this division $52,519.86 less $43,126.66, or only $9,393.20, from interchanged business that earned $70,385.28, and this, too, when the hauls of this interchanged business were undoubtedly very much shorter upon the lines of the Kansas Company than they were upon those of the Grand Island Company. A division of earnings so unjust and inequitable ought not to be continued after its injustice is discovered, and the diversion of the net revenues of the Grand Island Company which must result from such a division cannot be lawfully made after the bill for the foreclosure of the mortgage upon it was filed. What, then, shall be the basis of division? A true answer to this question is found, I think, in the report and order made in the suit of E. C. Benedict and others, complainants, against the Kansas City & Omaha Railroad Company and others, defendants, upon the petition of the complainants in that case for a proper division of these rates and earnings. Rules for their division were established in that case upon testimony which stood uncontradicted. They were reported to be just and equitable by the master. No exceptions were taken to his report. He recommended that they should be applied to all earnings derived from interchanged business between these roads after October 1, 1895. The court confirmed his report, and carried his recommendation into an order of the court; and I am of the opinion that the same rules should be applied to the division of the earnings of the business interchanged between the roads of the Kansas Company and the roads of the Grand Island Company, Republican Valley Company and the Union Pacific Company between January 1, 1895, and October 1, 1895.

There was no error in the finding of the master that the receivers had no moneys applicable to the payment of the $35,000 taxes, and his recommendation that the petition for their payment be dismissed, and the exception to that report must be overruled.

There was no error in the findings and conclusion of the master that the order of December 20, 1894, for the payment of the deficit arising from the operation of the roads of the Kansas Company was inapplicable, and ought not to be enforced subsequent to the filing of the bill for the foreclosure of the first mortgage upon the property of the Grand Island Company. The exceptions to both these reports must accordingly be overruled, but an order will be made that the rules for the division of the rates and earnings upon interchanged traffic as between the property of the Kansas City & Omaha Railroad Company and that of the St. Joseph & Grand Island Railroad Company and the properties of the other railroad companies con-

stituting the Union Pacific System, in force subsequent to October 1, 1895, by the order of this court in the Benedict Case, made December 11, 1895, be applied by the receivers to the division of these earnings between January 1 and October 1, 1895.