# HAMILTON GAS LIGHT AND COKE COMPANY *v.* HAMILTON CITY.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

No. 32. Argued November 2, 3, 1892. — Decided November 21, 1892.

The provision in sec. 2486 of the Revised Statutes of Ohio, authorizing cities and villages in that State to erect gas-works at the expense of the municipality, or to purchase any gas-works therein, do not infringe the contract clause of the Constitution of the United States when exercised by a municipality, within which a gas company has been authorized, under the provisions of the acts of May 1, 1852, and March 11, 1853, to lay down pipes and mains in the public streets and alleys and to supply the inhabitants with gas, and has exercised that power; and with which the municipal authorities have contracted, by contracts which have expired by their own limitation, to supply the public streets, lanes and alleys of the municipality with gas.

A municipal ordinance not passed under legislative authority, is not a law of the State within the meaning of the constitutional prohibition against state laws impairing the obligation of contracts.

Public grants susceptible of two constructions must receive the one most favorable to the public.

Although a legislative grant to a corporation of special privileges may be a contract, when the language of the statute is so explicit as to require such a construction, yet if one of the conditions of the grant be that the legislature may alter or revoke it, a law altering or revoking the exclusive character of the granted privileges cannot be regarded as one impairing the obligation of the contract.

THE court stated the case as follows:

The Hamilton Gas Light and Coke Company invokes against a certain ordinance of the city of Hamilton, a municipal cor-

poration of Ohio, the protection of the clause of the Constitution of the United States which forbids the passage by a State of any law impairing the obligation of contracts, as well as the clause declaring that no State shall deprive any person of property without due process of law. By the final judgment a temporary injunction granted against the city was dissolved and the bill dismissed. 37 Fed. Rep. 832.

The appellant became a corporation on the 6th day of July, 1855, under the general statute of Ohio of May 1, 1852, providing for the creation and regulation of incorporated companies. By the 53d section of that statute it was provided that any corporation formed under it should have full powers, if a gas company, to manufacture and sell and to furnish such quantities of gas as might " be required in the city, town or village where located, for public and private buildings, or for other purposes," with authority to lay pipes for conducting gas through the streets, lanes, alleys and squares, in such city, town or village, " with the consent of the municipal authorities of said city, town or village, and under such reasonable regulations as they may prescribe." The 54th section gave the municipal authorities power " to contract with any such corporation for lighting . . . the streets, lanes, squares and public places in any such city, town or village." 1 Swan & Critchfield Stats. 271, 300; 50 Ohio Laws, 274.

On the 11th of March, 1853, a supplementary act was passed authorizing the city council to regulate, by ordinance, from time to time, the price which gas light or gas light and coke companies should charge for gas furnished to citizens, or for public buildings, streets, lanes or alleys in such cities; and providing that such companies should in no event charge more than the price specified by ordinance of the city council; and that the city council might, by ordinance, regulate and fix the price for the rent of meters. Other sections of the act were in these words: " Sec. 31. That if such companies shall at any time hereafter be required by any city council as aforesaid to lay pipes and light any street or streets, and shall refuse or neglect for six months after being notified by authority of such city council to lay pipes and light said streets; then and in that case

such city council may lay pipes and erect gas-works for the supply of said streets, and all other streets which are not already lighted; and the said gas companies, gas light and coke companies, shall thereafter be forever precluded from using or occupying any of the streets not already furnished with gas pipes of such companies; and such city council may have the right to open any street for the purpose of conveying gas as aforesaid. Sec. 32. That a neglect to furnish gas to the citizens or other consumers of gas, or to any city by such companies, in conformity to the preceding section of this act, and in accordance with the prices fixed and established by ordinance of such city council, from time to time, shall forfeit all rights of such company under the charter by which it has been established; and any such city council may hereafter proceed to erect, or by ordinance empower any person or persons to erect gas-works for the supply of gas to such city and its citizens as fully as any gas light or gas light and coke company can now do, and as fully as if such companies had never been created." Curwen's Stats. c. 1248, pp. 2153, 2164, 2165; 51 Ohio Laws, 360.

Another act was passed April 5, 1854, empowering the city council to fix, from time to time, by ordinance, the minimum price at which it would require the company to furnish gas, for any period not exceeding ten years; and providing that from and after the assent of the company to such ordinance, by written acceptance thereof, filed in the clerk's office of the city, it should not be lawful for the council to require the company to furnish gas to the citizens, public buildings, public grounds or public lamps of the city at a less price during the period of time agreed on, not exceeding ten years. That act it was declared, should not operate to impair or affect any contract theretofore made between any city and any gas light or gas light and coke company. It was further provided : "Sec. 2. That the city council of such city may, at any time after the default mentioned in the thirty-first section of the act to which this is supplementary [c. 1248, p. 2164], by ordinance, permit such gas company to use and occupy the streets of such city for the purpose of lighting the same and furnishing the gas to

the citizens and public buildings. Sec. 3. That any temporary failure to furnish gas shall not operate as a forfeiture, under the 32d section of the act to which this is supplementary, unless such failure shall be by neglect or misconduct of such gas light or gas light and coke company: *Provided*, That such company shall, without unnecessary delay, repair the injury, and continue to supply such gas." Curwen Stats. c. 1439, p. 2570; 52 Ohio Laws, 30.

When the municipal laws of Ohio relating to gas companies were revised and codified in 1869, the above provisions were retained without material alteration, and now appear in the Revised Statutes of Ohio. 66 Ohio Laws, Title, Municipal Code, 145, 149, 218, 219, §§ 415 to 423; 1 Rev. Stats. Ohio, Title 12, Div. 8, c. 3, pp. 637 *et seq.* 3d ed. 1890.

But this revision and codification contained a provision not appearing in any previous statute, and now constituting section 2486 of the Revised Statutes of Ohio. That section is in these words:

" Sec. 2486. The council of any city or village shall have power, whenever it may be deemed expedient and for the public good, to erect gas-works at the expense of the corporation, or to purchase any gas-works already erected therein."

By an ordinance of the city of Hamilton, passed July 9, 1855, the appellant was authorized to place pipes in streets, lanes, alleys and public grounds to convey gas for the use of the city and its inhabitants; the company to have " the exclusive privilege of laying pipes for carrying gas in said city and of putting up pipes in dwellings in connection with the street pipes for the term of twenty years from the passage of this ordinance;" but not to charge for gas furnished the city or its inhabitants a price greater than, during the period of the contract, was usually charged in cities of similar size and with like facilities for the making and furnishing of gas. The company, from time to time, as required by the city, placed lamp-posts at the points indicated by resolutions passed by the council.

Written contracts were made, from time to time, between the parties, for lighting the city. The first one was dated

April 10, 1862. The last one was dated July 16, 1883, and expired, by its terms, January 1, 1889.

On the second day of January, 1889, the council passed a resolution reciting the termination of the last contract, and declaring that the city no longer desired the company to furnish gas for lighting streets and public places, and would not, after that date, pay for any lighting furnished or attempted to be furnished by the company, which was forbidden the use of the lamp-posts and other property of the city, and notified to remove without delay any attachment or connection theretofore maintained with the city's lamp-posts and other property. The company having been served with a copy of this resolution, protested against the validity of this action of the city. In a written protest, addressed to the council, it announced that its gas mains, filled with gas, extended throughout all the streets, etc., as theretofore designated and required by the city; "that all said mains are connected with your lamp-posts, lamps, and the burners thereon, and are all ready and fit for the purpose for which they were constructed and connected, and that this company is ready now and at all times to supply all the gas needed for the wants of your city and its inhabitants, and will furnish the same upon notice from you. This company owns the mains through which such gas is furnished and distributed for said public and private lighting; you own the lamp-posts, lamps and burners connected therewith."

The city, January 4, 1889, passed an ordinance looking to the issuing — such issuing being first approved by the popular vote — of bonds for the purpose of itself erecting works to supply the city and its inhabitants with gas.

The present suit was thereupon commenced by the company. The relief asked was a decree perpetually enjoining the city from disconnecting its lamp-posts from the company's mains or from lighting the city by any means or process other than that of the plaintiff's gas, as well as from issuing bonds for the purpose of erecting gas-works or for the purpose of providing gas-works to supply gas-light for the streets, lanes, alleys, public buildings and places, and for private consumers.

· *Mr. John F. Follett* and *Mr. John F. Neilan* (with whom was *Mr. T. H. Kelley* on the brief) for appellant.

I. There is no law of Ohio authorizing the council of any city, in which there are gas-works in full operation and fully performing all the duties required by the laws of the State, to erect gas-works or to levy a tax for that purpose. *Hirn* v. *State*, 1 Ohio St. 15, 20; *State* v. *Franklin County*, 20 Ohio St. 421, 424; *Pancoast* v. *Ruffin*, 1 Ohio, 381, 386; *Allen* v. *Parish*, 3 Ohio, 187; *State* v. *Blake*, 2 Ohio St. 147, 152; *Dodge* v. *Gridley*, 10 Ohio, 173; *State* v. *Darke County*, 43 Ohio St. 311, 315; *Warren* v. *Davis*, 43 Ohio St. 447, 449; · *Van Camp* v. *Board of Education*, 9 Ohio St. 406.

While there might be some foundation for the claim that section 2486, if it stood as an independent act, by implication repealed the provisions of sections 2480 and 2482, there is now no foundation whatever for any such claim; for, standing as they do, there is but one inference possible, and that is, that the several sections of the statute were each intended by the legislature to have full force and effect, and that no one should destroy or impair the force and effect of any other one of said sections.

·Looking at the history of this legislation in the light of these decisions, the conclusion is irresistible that the several sections of this statute must be so construed as to give force and effect to each of said sections.

Reading the whole statute together, there can be no doubt as to what was the scheme or system of the legislation upon the subject of gas companies, and municipal regulations and control of the same, and that scheme being found, it is the duty of the court to so construe the statute as to make it effective as well as to harmonize each section with every other.

The establishment of a gas company requires the outlay of a considerable sum of money. It is a risk at least depending upon a great many contingencies as to whether it would be a success. While it is thus upon one hand, on the other it is a great advantage to the city. Among other things, it enables the city to enforce with greater security its police power. Its

establishment is for the mutual benefit of both city and gas company. So the legislature in its wisdom has thrown safeguards and protection around both, preserving to the city the power to control, and to the gas company its life and existence subject to this power of control.

If a municipal corporation may at will erect gas-works and operate the same by public funds raised by taxation, how can it be said that the life and existence of a gas company are preserved subject to the control of the city, by the provisions of these statutes?

It is manifest that it is not competition but confiscation that is sought. No gas property can be successfully operated in competition with the municipality in which it is located, and a desire to avoid any such contingency, and to remove every pretext for every such attempt as is here made, was the incentive to the provision in the statutes requiring that in any contract the right should be reserved to the municipality to purchase the works.

II. The appellant company was organized under a law which secured it against interference with its business on the part of the city so long as it faithfully performed the duties undertaken by the acceptance of its charter ; and that charter was a contract with the State, which could not be impaired by subsequent legislation. *Fletcher* v. *Peck*, 6 Cranch, 87, 133; *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Green* v. *Biddle*, 8 Wheat. 1; *Providence Bank* v. *Billings*, 4 Pet. 514; *Planters' Bank* v. *Sharp*, 6 How. 301; *Vincennes University Trustees* v. *Indiana*, 14 How. 268; *Piqua Bank* v. *Knoop*, 16 How. 369; *Bridge Proprietors* v. *Hoboken Company*, 1 Wall. 116; *Hawthorne* v. *Calef*, 2 Wall. 10; *The Binghamton Bridge*, 3 Wall. 51; *Miller* v. *State*, 15 Wall. 478; *The Delaware Railroad Tax*, 18 Wall. 206; *Greenwood* v. *Freight Co.* 105 U. S. 13; *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650; *New Orleans Water Works Co.* v. *Rivers*, 115 U. S. 674.

III. The power vested by the statutes of Ohio in city councils to provide gas-works is a power conferred for a public benefit and to supply a public want, and when such benefit

has been conferred in a way recognized by the statute as sufficient, and the want does not exist, the power cannot be exercised.

IV. Neither the State, nor the city representing the State, can engage in any public enterprise in competition with a private corporation organized for the same purpose and fully complying with all the stipulations of the contract embodied in its charter.

Giving to the charter of this company the most limited construction in the interest of the company, after inducing the company to make large investments and expend large sums of money in property practically worthless for any other purpose, neither the State nor any of its agencies can engage in the same business at the expense of the people, to the irreparable injury, if not the total destruction of the property of the company.

V. The gas company cannot be deprived of its property without due process of law.

VI. The council of Hamilton has no power to levy a tax to subserve private interests, or for any purpose other than a public purpose, and where the professed purpose is to supply a public want that does not exist, that tax is unauthorized and void.

*Mr. Allen Andrews*, and *Mr. Israel Williams*, for appellee. *Mr. H. L. Morey*, *Mr. M. O. Burns*, *Mr. James E. Neal*, and *Mr. E. E. Hull* were with them on the brief.

Mr. Justice Harlan, after stating the case, delivered the opinion of the court.

The plaintiff's first contention is that there is no statute of Ohio authorizing any city, in which there are already gas-works in full and complete operation, to erect gas-works, or to levy a tax for that purpose. If this were conceded, we should feel obliged — the plaintiff and defendant both being corporations of Ohio — to reverse the judgment, and remand the cause with directions to dismiss the suit for want of jurisdiction in the Circuit Court. The jurisdiction of that court

can be sustained only upon the theory that the suit is one arising under the Constitution of the United States. But the suit would not be of that character, if regarded as one in which the plaintiff merely sought protection against the violation of the alleged contract by an ordinance to which the State has not, in any form, given or attempted to give the force of law. A municipal ordinance, not passed under supposed legislative authority, cannot be regarded as a law of the State within the meaning of the constitutional prohibition against State laws impairing the obligations of contracts. *Murray* v. *Charleston*, 96 U. S. 432, 440; *Williams* v. *Bruffy*, 96 U. S. 176, 183; *Lehigh Water Co.* v. *Easton*, 121 U. S. 388, 392; *N. O. Water Works* v. *Louisiana Sugar Co.*, 125 U. S. 18, 31, 38. A suit to prevent the enforcement of such an ordinance would not, therefore, be one arising under the Constitution of the United States. We sustain the jurisdiction of the Circuit Court because it appears that the defendant grounded its right to enact the ordinance in question, and to maintain and erect gas-works of its own, upon that section of the Municipal Code of Ohio, adopted in 1869 (now section 2486 of the Revised Statutes), providing that the city council of any city or village should have power, whenever it was deemed expedient and for the public good, to erect gas-works at the expense of the corporation, or to purchase gas-works already erected therein; which section the plaintiff contends, if construed as conferring the authority claimed, impaired the obligation of its contract previously made with the State and the city.

What, then, we must inquire, is the scope and effect of section 2486? This precise question has been determined by the Supreme Court of Ohio in *State* v. *City of Hamilton*, 47 Ohio St. 52, which was an action brought in the name of the State to determine whether the city had authority to erect its own gas-works. It was there contended, both by the Attorney General and the Hamilton Gas Light and Coke Company, that by sections 2480 and 2482 of the Revised Statutes (which are the same as sections 31 and 32 of the act of March 11, 1853), the legislature specified the conditions under which the council might build gas-works; that in the absence of those

conditions, the city was without power to do what it pro-posed to do; and that such an expression of the legislative will excluded the right of the city to erect gas-works under any circumstances. But the court said: "Those two sections designate what refusal or neglect on the part of gas com-panies to meet the requirements of law, would work a for-feiture of their rights under their charter, and authorize the council to lay pipes, and erect gas-works, and exclude a gas company already in operation from occupying any streets not already furnished with gas pipes of such companies; but such authority is very different from the general power conferred upon the council by section 2486 to construct gas-works with-out reference to the manner in which the existing company may use its franchise." "Section 2486," the court proceeds, "in plain language gives the power to the council either to erect gas-works, or to purchase such works already erected. The authority granted is not coupled with any conditions or contingency, but is to be exercised when the council may deem it expedient and for the public good. The language is free from ambiguity. The discretionary power would hardly seem consistent with the limitation sought to be imposed, that the council can build gas-works only where there are no gas-works in the municipality, or where gas companies, already organized, refuse or neglect to comply with the requirements of the law as to lighting or laying pipes, or neglect to furnish gas to citizens. The interest of the city may demand that a gas company established and doing business, although com-plying with all statutes and ordinances, should not continue to enjoy exclusive possession of the field of operation." Again: "In its present form, section 2486 was passed many years after the two sections which are reproduced in section 2480 and section 2482. Between the earlier and later stat-utory provisions we discover no repugnancy, and the canons of statutory construction do not require that either should prevail over the other. The authority given to municipalities by the later section is distinct from and independent of the power granted by the two antecedent sections."

Accepting, as we do, this decision of the highest court of

the State as correctly interpreting the legislative will, and, therefore, assuming that the legislature intended by section 2486 to confer authority upon the city of Hamilton to erect gas-works at its expense, whenever deemed by it expedient or for the public good to do so, the next contention of the plaintiff is that such legislation is within the constitutional inhibition of state laws impairing the obligations of contracts. This view is inadmissible. The statutes in force when the plaintiff became a corporation did not compel the city to use the gas-light furnished by the plaintiff. The city was empowered to contract with the company, for lighting streets, lanes, squares, and public places within its limits, but it was under no legal obligation to make a contract of that character, although it could regulate, by ordinance, the price to be charged for gas-light supplied by the plaintiff and used by the city or its inhabitants. It may be that the stockholders of the plaintiff supposed, at the time it became incorporated, and when they made their original investment, that the city would never do what evidently is contemplated by the ordinance of 1889. And it may be that the erection and maintenance of gas-works by the city at the public expense, and in competition with the plaintiff, will ultimately impair, if not destroy, the value of the plaintiff's works for the purposes for which they were established. But such considerations cannot control the determination of the legal rights of the parties. As said by this court in *Curtis* v. *Whitney*, 13 Wall. 68, 70: "Nor does every statute which affects the value of a contract impair its obligation. It is one of the contingencies to which parties look now in making a large class of contracts, that they may be affected in many ways by state and national legislation." If parties wish to guard against contingencies of that kind they must do so by such clear and explicit language as will take their contracts out of the established rule that public grants, susceptible of two constructions, must receive the one most favorable to the public. Upon this ground it was held in *Stein* v. *Bienville Water Supply Co.*, 141 U. S. 67, 81, that "we are forbidden to hold that a grant, under legislative authority, of an exclusive privilege, for a term of years, of supplying a munici-

pal corporation and its people with water drawn by means of a system of water-works from a particular stream or river, prevents the State from granting to other persons' the privilege of supplying, during the same period, the same corporation and people with water drawn in like manner from a different stream or river." What was said in *Turnpike Company* v. *The State*, 3 Wall. 210, 213, is quite applicable to the present case.   The State of Maryland incorporated a company with power to construct a turnpike between Baltimore and Washington; and subsequently incorporated a railroad company, with authority to construct a railroad between the same cities, the line of which ran near to and parallel with the turnpike. One of the questions in the case was, whether the last act impaired the obligation of the contract with the turnpike company, it appearing that the construction of the railroad had rendered it impracticable for the company, out of its diminished income, to maintain the turnpike in proper order.   This court said: "The difficulty of the argument in behalf of the turnpike company, and which lies at the foundation of the defence, is, that there is no contract in the charter of the turnpike company that prohibited the legislature from authorizing the construction of the rival railroad.   No exclusive privileges had been conferred upon it, either in express terms, or by necessary implication; and hence whatever may have been the general injurious effects and consequences to the company, from the construction and operation of the rival road, they are simply misfortunes which may excite our sympathies, but are not the subject of legal redress."   So, it may be said, in the present case, neither in the statutes under which the plaintiff became a corporation, nor in any contract it had with the city, after January 1st, 1889, was there any provision that prevented the State from giving the city authority to erect and maintain gas-works at its own expense, or that prevented the city from executing the power granted by the section of the Code of 1869 to which we have referred.

This conclusion is required by other considerations.   By the constitution of Ohio, adopted in 1851, it was declared that "no special privileges or immunities shall ever be granted,

that may not be altered, revoked, or repealed by the general assembly;" that "the general assembly shall pass no special act conferring corporate powers;" and that "corporations may be formed under general laws; but all such laws may, from time to time, be altered or repealed." Sec. 2, Art. 1; Secs. 1, 2, Art. 13. If the statute under which the plaintiff became incorporated be construed as giving it the exclusive privilege, so long as it met the requirements of law, of supplying gas-light to the city of Hamilton and its inhabitants by means of pipes laid in the public ways, there is no escape from the conclusion that such a grant, as respects, at least, its exclusive character, was subject to the power of the legislature, reserved by the state constitution, of altering or revoking it. This reservation of power to alter or revoke a grant of special privileges necessarily became a part of the charter of every corporation formed under the general statute providing for the formation of corporations. A legislative grant to a corporation of special privileges, if not forbidden by the constitution, may be a contract; but where one of the conditions of the grant is that the legislature may alter or revoke it, a law altering or revoking, or which has the effect to alter or revoke, the exclusive character of such privileges, cannot be regarded as one impairing the obligation of the contract, whatever may be the motive of the legislature, or however harshly such legislation may operate, in the particular case, upon the corporation or parties affected by it. The corporation, by accepting the grant subject to the legislative power so reserved by the constitution, must be held to have assented to such reservation. These views are supported by the decisions of this court. In *Greenwood* v. *Freight Co.*, 105 U. S. 13, 17, the question was as to the scope and effect of a clause in a general statute of Massachusetts, providing that every act of incorporation passed, after a named day, "shall be subject to amendment, alteration or repeal at the pleasure of the legislature." This court, referring to that clause, said: "Such an act may be amended; that is, it may be changed by additions to its terms or by qualifications of the same. It may be altered by the same power, and it may be repealed. What is it may be

repealed? It is the act of incorporation. It is this organic law on which the corporate existence of the company depends which may be repealed, so that it shall cease to be a law; or the legislature may adopt the milder course of amending the law in matters which need amendment, or altering it when it needs substantial change. All this may be done at the pleasure of the legislature. That body need give no reason for its action in the matter. The validity of such action does not depend on the necessity for it, or on the soundness of the reasons which prompted it." The words "at the pleasure of the legislature" are not in the clauses of the constitution of Ohio, or in the statutes to which we have referred. But the general reservation of the power to alter, revoke or repeal a grant of special privileges necessarily implies that the power may be exerted at the pleasure of the legislature.

We perceive no error in the record in respect to the Federal question involved, and the judgment must be

*Affirmed.*