AMERICAN WATERWORKS & GUARANTEE CO. v. HOME WATER CO. et al.

(Circuit Court, E. D. Arkansas, W. D.   March 26, 1902.)

1. JURISDICTION OF FEDERAL COURTS—DIVERSITY OF CITIZENSHIP—ACTION BY ASSIGNEE.

> A mortgage given by a water company covering rentals accruing to it under a contract with a city is no more than an assignment of a chose in action as to such rentals, and the mortgagee cannot maintain an action against the city to enforce payment of the same in a federal court, where the mortgagor and the city are both corporations of the same state; nor can one claiming the right to enforce the contract by subrogation to the rights of the mortgagee.[1]

2. CONSTITUTIONAL LAW—IMPAIRMENT OF OBLIGATION OF CONTRACTS—LAWS OF STATE.

> Where a city is empowered by the laws of the state to contract for a water supply, and to grant an exclusive franchise to use its streets for such purpose to the person contracted with during the term of the contract, it acts under such power in a legislative, and not an admin-istrative, capacity, and its enactments thereunder are laws of the state, within the meaning of the contract clause of the federal constitution.

3. JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.

> A suit to restrain the enforcement of enactments of a city, passed in the exercise of its delegated legislative powers, on the ground that they attempt to annul a contract made by a prior ordinance without notice to the other party or due process of law, involves a question arising under the constitution of the United States, and is within the jurisdiction of a federal court, where the requisite amount is involved, regardless of the citizenship of the parties.[2]

---

[1] Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.

[2] See Courts, vol. 13, Cent. Dig. § 821 [c, i, j, k]; 1899B Dig. § 79 [a]; 1900B Dig. § 70 [b], 1901A Dig. § 73 [b], 1901B Dig. § 65 [b]; Constitutional Law, 1897 Dig. § 43 [a].

Jurisdiction of federal courts in cases involving federal questions, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.

**4. EQUITY JURISDICTION—ACTION ON CONTRACT—ENFORCEMENT OF LEGAL LIABILITY.**

A right of action against a city to recover water rentals claimed to be due under a contract is at law, and a federal court of equity is without jurisdiction to enforce the payment of such rentals, even where it has acquired jurisdiction to determine other matters in controversy between the parties.

**5. SAME—SUIT BY GUARANTOR—PRESERVATION OF SECURITY.**

A guarantor of the bonds of a water company which has already under its contract paid interest thereon, on the company's default, so that the trustee has no ground for a foreclosure of the mortgage securing the same, is entitled to maintain a suit in equity against the city to prevent the annulment of the company's franchise, where such action will render valueless the mortgaged property, to the security of which the complainant has the right to be subrogated for its indemnity; and the city cannot raise the objection that complainant has not paid the entire debt, where it is not sought to take the property from the mort-- gagor, and the rights of the city are fully protected by the joinder of the mortgagor and mortgagee as defendants.

In Equity.   On demurrer to title.

The complainant, the American Waterworks & Guarantee Company, a corporation organized under the laws of the state of New Jersey, filed its bill against the Home Water Company and Arkansaw Water Company, corporations organized under the laws of the state of Arkansas, and having their principal places of business in the city of Little Rock, in this district, the Farmers' Loan & Trust Company, a corporation organized under the laws of the state of New York, and the city of Little Rock, a municipal corporation organized under the laws of the state of Arkansas, and located in this district, and alleged: That on December 9, 1880, and at divers times thereafter, the city council of the city of Little Rock, under and by virtue of authority conferred upon it by the statutes of the state of Arkansas, adopted various ordinances, granting to the Home Water Company the franchise, right, and privilege of erecting and maintaining a system of waterworks in the city of Little Rock, and fixing the price to be paid by the city for water used by the city; also the pressure to be maintained, the kind of water to be used, etc.   The Home Water Company, in the manner provided by law, accepted the said ordinances, and they became contracts between the city and the said water company.   The ordinance adopted by the city council on November 3, 1885, provided, among other things, for an extension of the original franchise for the term of 50 years from the date of the passage of said ordinance, instead of 25, as at first provided; and the ordinance of August 1, 1892, fixed the rental price of fire hydrants to be paid by the city at $50 each per annum.   That the Home Water Company performed all the provisions contained in the several ordinances and contracts, and expended large sums of money in carrying out said contracts and in improving its plant and facilities for furnishing the city with pure water, all of which was done with the full knowledge and under the direction and requirements of the city council, which possessed full power to enter into the aforesaid contracts.   During the time the Home Water Company was engaged in making said improvements the city paid the hydrant rental agreed upon, and in all respects carried out the contracts according to the terms thereof, and insisted upon the due and prompt performance by the said water company of all its undertakings under said contracts.   That, in order to enable the Home Water Company at all times to carry out its contracts with the city of Little Rock, the said Home Water Company procured the Arkansaw Water Company to construct the reservoirs and other improvements necessary, and to store for and deliver to the said defendant sufficient water, of suitable quality, to meet all requirements, and in consideration of said undertakings the Home Water Company executed to the Arkansaw Water Company a mortgage of its property, plant, and franchises, and assigned to it all the income and revenues that might accrue from the operation of its water plant.   In order to obtain means to make the improvements above re-

ferred to and other improvements and extensions which became necessary, the Arkansaw Water Company executed and negotiated, at different times, 2,000 bonds, aggregating $2,000,000, and to secure the same executed deeds of trust to the Farmers' Loan & Trust Company, as trustee, conveying to said company all its waterworks and property in and near the city of Little Rock, and all revenues, rents, income, and profits, including all revenues and income that may accrue from and under the franchise and contracts granted by the city of Little Rock to the Home Water Company. In order to better secure the bonds and mortgages, the Arkansaw Water Company procured the complainant to guaranty the payment of the principal and interest of said bonds. Of these bonds, $1,150,000 are now outstanding, and $850,000 are held in trust by the trustee to provide for future extensions and improvements in the plant of said company. That, after the execution of the deeds of trust above mentioned, the Home Water Company conveyed to the Farmers' Loan & Trust Company its waterworks in and near the city of Little Rock, together with all land, machinery, outfits, etc., and rents, privileges, and franchises, under ordinances passed by the city of Little Rock, and all rights, rights of action, incomes, revenues, and profits from any source whatsoever, in trust for the uses and purposes, and upon the conditions set forth and contained in the deed of trust executed by the Arkansaw Water Company to the said Farmers' Loan & Trust Company. And the said Arkansaw Water Company executed a deed in fee simple absolute to the Home Water Company, conveying all of its property, rights, and income.

It is further alleged that, during the time of the execution of the mortgages and the issuance of the bonds referred to, the city of Little Rock paid the hydrant rental provided in the contracts, and never at any time questioned the validity of any of said contracts; and the said mortgages and bonds were executed and delivered by the Arkansaw Water Company, the trust accepted by the Farmers' Loan & Trust Company, and the guaranty made by the complainant, in full faith and belief that all of the said contracts were valid and binding; that there was no claim on the part of the city that said contracts were invalid on account of any defect of power or want of authority on the part of the city in executing the same, or that they were subject to change without the consent of the parties thereto. That the city has violated the contracts previously referred to, by asserting the same to be of no force and effect, and by declaring them to be forfeited for pretended noncompliance on the part of the Home Water Company with the terms of said contracts, without any previous notice to the said company, and the city has since refused to carry out said contracts or recognize them as binding, and has refused to make any payments under the contracts since June 30, 1899, thereby depriving the Home Water Company of its property, to wit, the unpaid rentals owing by the city, and the rights, privileges, and franchises enjoyed by said company, without due process of law, in violation of the provisions of section 10, art. 1, of the constitution of the United States, and of the provisions of section 1 of the fourteenth amendment to the constitution of the United States. By such acts and conduct the said city has injured the complainant and the Farmers' Loan & Trust Company by impairing their rights in the property as security and indemnity under the conveyances in trust mentioned previously. The city claims that the contract of November 3, 1885, is not binding upon it, as the city council had no power to enter into a contract that would bind succeeding councils for a term of 50 years, and that the hydrant rental provided in the contract of August 1, 1892, is excessive, and the city claims the right to revise the rates without the consent of the other contracting party, and refuses to pay the hydrant rental or perform its contract in any manner, although the Home Water Company has continued to render the service and supply water according to the terms of the contracts. The city sometimes claims that the Home Water Company has not performed its contract by furnishing pure water, and sometimes that it has not maintained the pressure called for by the contracts, but that such claims are untrue, and were not made in good faith, but are made for the purpose of carrying out the intention of the city to repudiate said contracts, and to force the

Home Water Company to enter into a new contract with the city. Among other things, said city, in further pursuance of its aforesaid design, through the board of public affairs and the fire committee, created by and representing the city council, did on February 26, 1900, cause a notice to be served on the Home Water Company, in words and figures as follows, to wit: "Some days ago the board of public affairs and fire committee of this city, in accordance with the recommendations of Hiram Phillips, hydraulic engineer, requested of you that you at once put in larger mains on Lincoln avenue, and certain parts of Main and Seventh streets. Since this, the city council has, by resolution, signified its desire that the whole question of your contract with the city should be thoroughly looked into, and has authorized the city attorney to employ an assistant for this purpose, if he so desired. In view of this, the board of public affairs desire that you take no further action on its request above referred to, unless upon your own motion, and without our waiving any right to insist upon a forfeiture of your charter and contract. With the present lights before us, the best course to be pursued is that the city is to insist that the contract existing between your company and it is no longer binding and enforceable upon it. We have repeatedly notified you, and do now, that you have not maintained a constant and average pressure as required by your contract; you have not furnished a full and adequate supply of water for the extinguishment of fires; you have not secured nor constantly maintained a supply of pure and wholesome water fit for domestic and manufacturing purposes; you have not maintained your pipe connections and machinery so that direct pressure could be given; your water mains have not been of sufficient capacity to meet the requirements of your contract; you have required the citizens to pay their bills six months in advance, when your charter only requires the bills paid monthly; you have charged consumers exorbitant charges for water meters and have required them to pay charge for reading meters. For these reasons, we hereby demand that your contract and charter be annulled." Afterwards the board of public affairs and the fire committee reported their said action and said notice to a meeting of the city council, and a resolution was adopted by the city council approving and confirming the action of said bodies.

It is also alleged that the acts of the city repudiating its contracts will seriously impair and eventually destroy the value of the property of the Home Water Company, and thus destroy the security of the bondholders, and will obligate complainant to advance the money to pay the interest on said bonds, $88,096.58 of which has already been advanced by complainant under its guaranty; that the Arkansaw Water Company is liable for said sum of money, but it has conveyed all its property to the Home Water Company, and had nothing that can be applied to the satisfaction of complainant's demand; that the complainant is entitled to be subrogated to the rights and lien of the trustee, the Farmers' Loan & Trust Company, in the securities held by it under the mortgages mentioned above, and that it is entitled to subject the income and revenues of the Home Water Company that were assigned by said company to the Arkansaw Water Company to the payment of the advances made by it in payment of the interest on the bonds of the Arkansaw Water Company; and that there is now due the water company from the city $31,500 for two years' water supply, which it refuses to pay; that, under the provisions of the deeds of trust to the Farmers' Loan & Trust Company, the said company cannot, so long as complainant continues to perform its obligation to pay the current interest on said bonds, take steps to subject the securities, or seizing the income and revenues of the Home Water Company and the Arkansaw Water Company, and complainant is remediless at law; that the action of the city in annulling said contracts and refusing to pay or consider the bills of the water company injuriously affects the securities, by casting a cloud upon the franchise and right of the water company to use the streets of the city, and upon the validity of its contracts with the city, and entitles complainant to have said cloud removed and the validity of said securities established by this court.

The prayer of the bill is that a decree be entered declaring that the contracts between the defendant city and the Home Water Company, and

the franchise granted by said city, are valid and binding, that the action of the city in attempting to annul the franchise and contract with the Home Water Company, and in refusing to carry out and perform the said contract, are invalid, and of no effect; and that said city be perpetually enjoined and restrained from doing any act or asserting any claim of invalidity in said contracts and ordinances that would be calculated to cast a cloud upon the legality of said contracts and franchise, or from annulling or declaring said contracts forfeited; that the Arkansaw Water Company be decreed to pay complainant the sums advanced by it under its guaranty, and that complainant be subrogated to all the rights of the trustee in the mortgages referred to, and of the Arkansaw Water Company under the agreements entered into by the Home Water Company; and that the income and revenues of the Home Water Company be subjected and applied to the payment of the sums owing complainant as aforesaid; and to that end that the city of Little Rock be required to pay into court the amount of the hydrant rental owing by it under its contracts. To this bill the city of Little Rock filed a demurrer, challenging the jurisdiction of this court to entertain this suit, and also that the allegations in the bill do not entitle complainant to maintain this action, and that if it is entitled to any relief, which is denied, it has a complete and adequate remedy at law.

J. M. Moore and W. B. Smith, for complainant.

W. J. Terry, W. L. Terry, and Morris M. Cohn, for city of Little Rock.

TRIEBER, District Judge. The bill, as appears from the foregoing statement of facts, seeks to prevent a threatened destruction by the city of Little Rock of the franchise of the water company, and also to remove, as a cloud upon its title, the resolution of the city of Little Rock declaring the franchise of the water company forfeited, which, it is alleged, was done without any just cause, without notice to the water company, and without due process of law, within the meaning of the provisions of the constitution of the United States. It also seeks to recover in the same action a money judgment against the city for money alleged to be due from the city to the water company by virtue of a contract entered into between the city and the water company, and to the rights of the water company complainant claims to be subrogated by virtue of the facts in the bill fully set forth. The contract for the water rentals was between the city and the water company, both of whom are corporations created by and existing under the laws of the state of Arkansas. The complainant's rights, if it has any, are solely based on a mortgage of the water company to the Farmers' Loan & Trust Company, one of the defendants in the case, of all its property, including its rents, profits, and franchises, executed to secure bonds of the water company, the payment of which bonds, and the interest thereon, complainant has guarantied, and in part paid.

Is that part of the bill which claims the right to have collected in this action the money alleged to be due from the city to the water company for hydrant rentals cognizable in the federal court? Whether a mortgage of the rents and profits of such a corporation entitles the mortgagee, or one claiming under the mortgage, to maintain an action for the recovery of such rents before possession is taken by the mortgagee, or before the appointment of a receiver by a court in a foreclosure proceeding, it is unnecessary to determine at present, although the weight of authority seems to be against it. Bridge Co. v. Heidelbach, 94 U. S. 798, 24 L. Ed. 144; Dow v. Railroad Co., 124 U. S.

652, 8 Sup. Ct. 673, 31 L. Ed. 565; Sage v. Railroad Co., 125 U. S. 361, 8 Sup. Ct. 887, 31 L. Ed. 694; Trust Co. v. Shepherd, 127 U. S. 503, 8 Sup. Ct. 1250, 32 L. Ed. 163; United States Trust Co. v. Wabash W. R. Co., 150 U. S. 308, 14 Sup. Ct. 86, 37 L. Ed. 1085; Veatch v. Trust Co., 28 C. C. A. 384, 84 Fed. 274. It is well settled that a mortgagee of such a claim is merely an assignee of a chose in action, and, unless the requisite diversity of citizenship exists to enable the assignor to maintain such an action on the contract in the federal court, neither the trustee nor the mortgagee, nor anyone claiming under them, can do it. New York Guaranty & Indemnity Co. v. Memphis Water Co., 107 U. S. 205, 2 Sup. Ct. 279, 27 L. Ed. 484; City of Eau Claire v. Payson, 46 C. C. A. 466, 107 Fed. 552; on rehearing, 48 C. C. A. 608, 109 Fed. 676. In New York Guaranty & Indemnity Co. v. Memphis Water Co., the court said:

"It was objected in limine, by the demurrer to the bill, that, as the complainant claims under the assignment of the contract made to the trustees, the circuit court had no jurisdiction, because the water company, with which the contract was made, and which made the assignment, is a citizen of Tennessee. This objection is insisted on here, and would seem to be conclusive, if the citizenship of the parties were the only ground of jurisdiction of the circuit court. The act of March 3, 1875 (18 Stat. 470), declares that no circuit or district court shall have cognizance of any suit founded on contract in favor of an assignee, unless a suit might have been prosecuted in such court to recover thereon if no assignment had been made. This suit is founded on the contract between the city and the water company. The whole claim of the bondholders to any benefit therefrom depends upon the assignment thereof contained in the mortgage deed; and, although the trustees of the mortgage are the real assignees, the bondholders, as cestuis que trustent, claim under them and stand on no higher plane, as regards the right to sue, than the trustees themselves. The complainants, however, insist that this suit is cognizable by the circuit court by reason of that court's having judicial possession and control of the mortgaged property in the Yardley suit. The bill and cross bills in that suit, it has been seen, were dismissed; but the parties regarded the consent decree entered therein as giving the court authority to keep the property under its control, and to cause it to be sold. Therefore, so far as relates to the waterworks themselves, and all the property comprised in the mortgage which is susceptible of actual possession, the position of the appellants may be correct. But the claim against the city does not lie in possession, but in contract alone. The contract itself may be subject to sale as part of the mortgage assets; but the proceeds of the contract, the money alleged to be due from the city to the water company under it, has never been reduced to possession, and the city of Memphis denies its liability to pay. In order to reduce to possession the money claimed to be due, and subject it to the control of the court, the ordinary mode of enforcing the contract must be resorted to. It may be that the circuit court had the power to direct such a proceeding to be had as ancillary to its administration of the mortgage fund; but it must be a proper proceeding, adapted to the nature of the demand. If a promissory note were included in the mortgage fund, and the parties liable upon it should refuse to pay it, the circuit court might probably order the trustees of the mortgage to bring an action on the note; but a bill in equity would hardly be considered a proper proceeding for enforcing its collection." 107 U. S. 211–212, 2 Sup. Ct. 284, 27 L. Ed. 484.

But it is urged that, as complainant does not claim by privity of contract, but by right of subrogation, this rule does not apply, if the necessary diversity of citizenship between the subrogee and the debtor exists. While it is true that the right of subrogation does not depend upon privity between the parties, but is the creature of courts of equity,

yet the subrogee is merely an equitable assignee, and for jurisdictional purposes can have no greater rights than the assignee of a chose in action. As the water company, the assignor, could not maintain an action in this court on account of diversity of citizenship, neither can its assignees, whether they are such by contract of the parties or by subrogation.

The other ground of jurisdiction upon which complainants rely is that federal questions are involved. If this is true, the citizenship of the parties is immaterial; or if the bill shows that by legislative action of the city council, enacted in pursuance of the powers granted to it by the legislature of the state, the obligation of the contract between the city and the water company has been impaired, or that the water company, to whose rights complainant claims to have been subrogated, has been deprived of its property without due process of law, this court has jurisdiction, as the amount involved exceeds the sum of $2,000, exclusive of interest and costs. City Ry. Co. v. Citizens' St. Ry. Co., 166 U. S. 557, 17 Sup. Ct. 653, 41 L. Ed. 1114; Ames v. Kansas, 111 U. S. 449, 4 Sup. Ct. 437, 28 L. Ed. 482. Vicksburg Waterworks Co. v. City of Vicksburg, 185 U. S. 65, 22 Sup. Ct. 585, 46 L. Ed. ——. The Home Water Company, although an Arkansas corporation, could maintain an action in this court against the city upon these grounds, and it follows, as of course, that its assignee or subrogee can do the same.

Do the allegations of the bill setting out the acts of the defendant city, and which by the demurrer are admitted to be true, sustain complainant's claim that the state, acting through the city's legislative council, is attempting to impair the obligation of a contract, within the meaning of section 10, art. 1, of the constitution of the United States, or deprive the water company of its property without due process of law, within the provision of section 1 of the fourteenth amendment to the constitution? It is claimed that these constitutional provisions only apply to the acts of the state; that the obligation of the contract must have been impaired, or the attempt to deprive the water company of its property without due process of law have been made, by a law of the state itself, in order to bring them within the jurisdiction of a federal court, and that a city is not within the meaning of these constitutional prohibitions, being merely a corporation created by the laws of the state to perform certain functions of a public nature, and therefore not included within these provisions of the federal constitution. A council of a municipal corporation, under the laws of the state of Arkansas, and of those of almost every state of this Union, acts in a dual capacity,—administrative and legislative. Its acts in an administrative capacity, no matter how unlawful, will not be violative of these constitutional provisions, but merely acts of the same nature as those of a private corporation. The refusal of the city in this case to pay the water rentals alleged to be due to the water company under its contract, whether evidenced by an ordinance or resolution of the council, or merely by a failure to make an appropriation of the money necessary to pay it, no matter upon what ground the action is based, will not be sufficient to give a federal court jurisdiction upon

the grounds claimed in the bill, no more than if a private corporation, through its board of directors, attempts to repudiate its obligations. Thus, it was held in New Orleans Waterworks Co. v. Louisiana Sugar Co., 125 U. S. 18, 8 Sup. Ct. 741, 31 L. Ed. 607, that where the legislature of the state itself defines the powers of the city, leaving to the city council only the duty of determining what persons come within the definition, and how the permits are to be granted, such power conferred upon a city council is not legislative, but administrative, and the permit granted by the council is not a by-law of the city, still less a law of the state. The court in that case say:

"If that license (granted by the council) was within the authority vested in the city council by the law of Louisiana, it was valid; if it transcended that authority, it was illegal and void. But the question whether it was lawful or unlawful depended on the law of the state, and not at all on any provision of the constitution or laws of the United States." 125 U. S. 32, 8 Sup. Ct. 749, 31 L. Ed. 607.

In Hamilton Gaslight Co. v. City of Hamilton, 146 U. S. 258, 13 Sup. Ct. 90, 36 L. Ed. 963, it was held that:

"A municipal ordinance, not passed under supposed legislative authority, cannot be regarded as a law of the state, within the meaning of the constitutional provision against state laws impairing the obligation of contracts. * * * A suit to prevent the enforcement of such an ordinance would not, therefore, be one arising under the constitution of the United States." 146 U. S. 266, 13 Sup. Ct. 92, 36 L. Ed. 963.

On the other hand, if the action of the city is based upon legislative authority to grant a franchise and to enter into contracts with parties for the erection and use of public utilities, to grant the use of the public streets and charge for the use of its privileges, then the action of the city council is legislative, as one of the subordinate agencies of the state, and the deprivation of rights once granted without legal cause, or without due process of law, is within the constitutional prohibitions, and upon such allegations a federal court has jurisdiction of the cause, regardless of the citizenship of the parties. Wright v. Nagle, 101 U. S. 791, 25 L. Ed. 921; Railroad Co. v. Dennis, 116 U. S. 667, 6 Sup. Ct. 625, 29 L. Ed. 770; Hamilton Gaslight Co. v. City of Hamilton, 146 U. S. 258, 13 Sup. Ct. 90, 36 L. Ed. 963; City R. Co. v. Citizens' St. Ry. Co., 166 U. S. 563, 17 Sup. Ct. 653, 41 L. Ed. 1114; City of Walla Walla v. Walla Walla Water Co., 172 U. S. 9, 19 Sup. Ct. 77, 43 L. Ed. 341.

In Scott v. McNeal, 154 U. S. 34, 14 Sup. Ct. 1108, 38 L. Ed. 896, Mr. Justice Gray, in delivering the opinion of the court, says:

"The fourteenth amendment to the constitution of the United States, after other provisions which do not touch this case, ordains, 'Nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.' These provisions extend to all acts of the state, whether through its legislative, its executive, or its judicial authorities." 154 U. S. 45, 14 Sup. Ct. 1112, 38 L. Ed. 896.

The statutes of Arkansas governing its municipal corporations, as published in Sand. & H. Dig., so far as they are applicable to this case, are as follows:

"Sec. 5134. They shall have power to provide a supply of water by the construction and regulation of wells, pumps, cisterns, reservoirs or water-

works; to prevent the unnecessary waste of water; to prevent the pollution of the water and injury to the waterworks; and for the purpose of establishing or supplying waterworks, any municipal corporation may go beyond its territorial limits; and its jurisdiction to prevent or punish any pollution or injury to the stream or source of water, or to the waterworks, shall extend five miles beyond its corporate limits."

"Sec. 5136. For the purpose of providing water, gas or street railroads, the mayor and council may contract with any person or company to construct and operate the same, and may grant to such person or company for the time which may be agreed upon the exclusive privilege of using the streets and alleys of such city for such purpose or purposes."

"Sec. 5141. They shall have power to lay off, open, widen, straighten and establish, to improve and keep in order and repair, and to light streets, alleys, public grounds, wharves, landing places and market places; to open and construct and keep in order and repair sewers and drains. * * *"

"Sec. 5208. The city council shall have the care, supervision and control of all the public highways, bridges, streets, alleys, public squares and commons within the city; and shall cause the same to be kept open and in repair, and free from nuisance."

"Sec. 5274. The city council shall possess all the legislative powers granted by this act, and other corporate powers of the city not herein prohibited, or by some ordinance of the city council made in pursuance of the provisions of this act and conferred on some officer of the city. * * *"

From these provisions it will be seen that the city councils of municipal corporations in the state of Arkansas are expressly granted legislative powers in relation to all municipal affairs, and especially to grant to water companies the exclusive privilege of using the streets and alleys of the city for such purposes.  In pursuance of that authority, the bill alleges that the city council did grant to the water company the exclusive privilege of using the streets and alleys for its uses for the term of 50 years, and now, on the recommendation of the board of public affairs and the fire committee of the council, has annulled the contract with the water company and its charter. This action of the city, if unlawfully exercised and without notice and due process of law, is clearly an impairment of the obligation of the contract and destruction of the water company's property without due process of law; for of what value is the plant of the company if it cannot use the streets and alleys to lay and repair its pipes, collect water rates from its customers, or exercise any of the franchises granted to it by the city and essential to the exercise of its functions as a public water company?  New Orleans Waterworks Co. v. Rivers, 115 U. S. 674, 6 Sup. Ct. 273, 29 L. Ed. 525; Louisville Gas Co. v. Citizens' Gaslight Co., 115 U. S. 683, 6 Sup. Ct. 265, 29 L. Ed. 510; City of Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341; Vicksburg Waterworks Co. v. City of Vicksburg, 185 U. S. 65, 22 Sup. Ct. 585, 46 L. Ed. ——. Iron Mountain Ry. Co. v. City of Memphis, 37 C. C. A. 410, 96 Fed. 113; Little Falls Electric & Water Co. v. City of Little Falls (C. C.) 102 Fed. 664; Anoka Waterworks, Electric Light & Power Co. v. City of Anoka (C. C.) 109 Fed. 580; Consolidated Water Co. v. City of San Diego (C. C.) 84 Fed. 369.  In the City of Walla Walla Case the court say:

"It is sufficient for the purpose of this case to say that this court has too often decided, for the rule to be now questioned, that the grant of a right to supply gas or water to a municipality and its inhabitants through pipes

and mains laid in the streets, upon condition of the performance of its service by the grantee, is the grant of a franchise vested in the state in consideration of the performance of a public service, and, after performance by the grantee, is a contract protected by the constitution of the United States against state legislation to impair it." 172 U. S. 9, 19 Sup. Ct. 81, 43 L. Ed. 341.

In City of Los Angeles v. Los Angeles City Water Co., 177 U. S. 558, 20 Sup. Ct. 736, 44 L. Ed. 886, the contention was, as in the case at bar, that the city had acted solely in its corporate capacity, and not as a governmental agent of the state, and that for this reason no federal question was involved to give the federal court jurisdiction; but the court overruled this, and held that the acts of the council in changing the rates to be charged under the contract was legislative, and not administrative, and therefore within the constitutional prohibition. None of the cases cited by counsel for the defendant on that question are in conflict with the foregoing. St. Paul Gaslight Co. v. City of St. Paul, 181 U. S. 142, 21 Sup. Ct. 575, 45 L. Ed. 788, was an action at law instituted in a state court to recover for the rental of street lamps under the contract made by the gas company with the city. Upon appeal to the supreme court of Minnesota, that court decided that the sole issue involved was a construction of the contract between the gas company and the city, whereupon the cause was removed by writ of error to the supreme court of the United States, and that court, in dismissing the writ of error for want of jurisdiction, held that:

"It is no longer open to question that a by-law or ordinance of a municipal corporation may be such an exercise of legislative power delegated by the legislature to the corporation as a political subdivision of the state, having all the force of law within the limits of the municipality, that it may properly be considered as a law, within the meaning of this article of the constitution of the United States." 181 U. S. 148, 21 Sup. Ct. 577, 45 L. Ed. 788.

But it found that the record showed the only question involved, and upon which the decision of the state court rested, was the interpretation of the contract, and therefore presented no controversy within the jurisdiction of that court. In Hamilton Gaslight Co. v. City of Hamilton, supra, the court sustained the jurisdiction of the federal court, but held that:

"Although a legislative grant to a corporation of special privileges may be a contract, and the language so explicit as to require such a construction, yet if one of the conditions of the grant be that the legislature may alter or revoke it, a law altering or revoking the exclusive character of the granted pr'vileges cannot be regarded as one impairing the obligation of the contract."

In City of Fergus Falls v. Fergus Falls Water Co., 19 C. C. A. 212, 72 Fed. 873, decided by the circuit court of appeals for this circuit, the decision of the court was limited to the one point that it is not competent, in an action at law on a contract, to inject a federal question into the case by suggesting that the defendant will interpose as a defense to the suit a resolution of the council which impaired the obligation of a contract. Judge Caldwell, speaking for the court in that case, says:

"It is apparent that the only use the plaintiff proposes to make of the constitution is as a barrier to a defense which the plaintiff suggests the

defendant may set up. The appeal to the constitution is made, not to support the plaintiff's cause of action, but by way of replication to an anticipated defense. The jurisdiction of the circuit court cannot be invoked by any such form of pleading in an action like this. In equity pleadings the complainant is allowed to anticipate and avoid a defense, and this is called the 'charging part of the bill.' Story, Eq. Pl. par. 31. But at law the plaintiff is never expected to state matters which should come more properly from the other side. It is sufficient for each party to make out his own case. 1 Chit. Pl. (Ed. 1867) 222. It is sufficient for the plaintiff to state his own cause of action, and he should not anticipate his adversary's defense, for the reason that the latter may never make the defense sought to be guarded against. Bliss, Code Pl. par. 200. In this case the defendant set up no such defense as the plaintiff pretended to anticipate and avoid. In Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 Sup. Ct. 654, 38 L. Ed. 511, the supreme court say that: 'By the settled law of this court, as appears from the decisions above cited, a suggestion of one party that the other will or may set up a claim under the constitution or laws of the United States does not make the suit one arising under that constitution or those laws.' And it is equally well settled that the suggestion in a complaint in an action at law that the defendant may or will set up a defense based on a state statute repugnant to the constitution does not make the suit one arising under the constitution. The averments of the complaint, beyond those which state a cause of action upon the contract in suit, are mere surplusage. When the statement of the plaintiff's cause of action, in legal and logical form, such as is required by the rules of good pleading, does not disclose that the suit is one arising under the constitution or laws of the United States, then the suit is not one arising under that constitution or those laws, and the circuit court has no jurisdiction." 19 C. C. A. 214, 215, 72 Fed. 875.

The court has undoubtedly jurisdiction of this cause, upon the ground that the action of the council of the city of Little Rock annulling the water company's contract and franchise without a hearing was in contravention of the provisions of the constitution of the United States.

Is there any equity in the bill? During the argument it was claimed by counsel for the complainant that, even if the court should hold that it is without jurisdiction to grant the relief asked for,—the collection of the alleged indebtedness claimed to be due from the city for hydrant rentals,—the court, if it takes jurisdiction on any other ground, will still have the right to grant such relief, on the ground that when a court of equity has once obtained jurisdiction of a cause it is its duty to retain it for all purposes. While this is a general rule, it has no application to causes of this kind in the federal courts. The seventh amendment to the constitution guaranties, in all legal controversies where the value in controversy shall exceed $20, the right of trial by jury. That provision would be defeated if a strictly legal question could be tried by a court of equity. Hipp v. Babin, 19 How. 271, 15 L. Ed. 633; Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873; Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358. The identical question now raised was before the supreme court in New York Guaranty & Indemnity Co. v. Memphis Water Co., supra, and was decided adversely to complainant's contention. For a full review of the authorities on this point I refer to the able opinion of Judge Woods, delivered on the motion for a rehearing in City of Eau Claire v. Payson, 48 C. C. A. 608, 109 Fed. 676; Smith v. Bourbon Co., 127 U. S. 105, 111, 8 Sup. Ct. 1043, 32 L. Ed. 73. The allegations in the bill, so far as they seek to prevent a forfeiture

of the water company's franchise, are certainly sufficient to entitle the complainant to relief in a court of equity; for, unless restrained by the courts, it is charged that the water company's franchise will be annulled and thereby its property, which is the principal security held for the benefit of complainant as the guarantor of the water company's bonds to the amount of $2,000,000, made worthless. The numerous citations hereinbefore referred to, and which it is unnecessary here to repeat, are conclusive on this question, for they all hold that a court of equity has jurisdiction to prevent such wrongs if in violation of the constitutional provisions. The action of the city, even if void, is certainly a cloud upon the franchise of the water company.

But it is claimed that complainant is not the proper party to maintain this action; that the water company or the trustee of the mortgage are the only parties who can be heard to complain. The allegations in the bill are that complainant is the guarantor of the $2,000,000 bonds issued by the water company to the trust company and secured by the mortgage; that it became such guarantor in reliance upon this mortgage security, to which in case it was required to pay the debt, or any part thereof, it would become subrogated by operation of law; that it has now paid, as such guarantor, $88,000; that, by reason of the guaranty and the payment of the interest by the guarantor as it matured, there has been no default; and that the trustee of the mortgagee, relying upon complainant's guaranty to pay promptly the interest and principal as it matures, takes no steps to prevent this wrong. It is further charged that, as there has been no default so far as the bondholders are concerned, complainant, having promptly paid the interest, as the guarantor of the water company, the trustee can institute no proceeding to foreclose the mortgage. Upon such a state of facts it would be strange if a court of equity could grant no relief. The creditor who receives securities for a guarantied debt holds such securities in trust for the guarantor, and upon payment of the debt by the guarantor he is entitled in equity to subrogation to all securities held by the creditor. Prairie State Nat. Bank v. United States, 164 U. S. 227, 231, 17 Sup. Ct. 142, 41 L. Ed. 412. Nor is it always necessary that the debt should be paid before the guarantor can apply to a court of equity for protection against the loss or destruction of the security. Lord Redesdale says:

"A court of equity will also prevent injury in some cases by interposing before any actual injury has been suffered, by a bill which has sometimes been called a bill quia timet, in analogy to proceedings at the common law, where in some cases a writ may be maintained before any molestation, distress, or impleading. Thus a surety may file a bill to compel the debtor on a bond in which he has joined to pay the debt when due, whether the surety has been actually sued for it or not; and upon a covenant to save harmless, a bill may be filed to relieve the covenantee under similar circumstances." Redes. Pl. 148, cited and followed by the supreme court in City of New Orleans v. Christmas, 131 U. S. 191–212, 9 Sup. Ct. 745, 33 L. Ed. 99; Story, Eq. Jur. § 826.

The trustee may refuse to take any steps to prevent the destruction of the security, by reason of the fact that its debt is perfectly secure, owing to complainant's guaranty. In such case the guarantor cannot compel the creditor to exhaust the security of the principal debtor before calling on it for the debt. Gary v. Cannon, 38

N. C. 64; Miller v. White, 25 S. C. 235; Armstrong v. Poole, 30 W. Va. 266, 5 S. E. 257; Hardy v. Overman, 36 Ind. 549; Roberts v. Jeffries, 80 Mo. 115; Allen v. Woodard, 125 Mass. 400, 28 Am. Rep. 250; Bank v. Wood, 71 N. Y. 405, 27 Am. Rep. 66. The Arkansaw Water Company, the principal debtor, being alleged in the bill to be insolvent, may decline to incur any expense of litigation, for the reason that its entire property is mortgaged for its full value, and it has, therefore, nothing to lose. Upon what principle of equity, then, should the guarantor, the only party who, by the action of the city, is liable to be the loser, be denied relief by a court of equity? How are its rights to be protected if the doors of the courts of equity are closed to it? It must not be overlooked that the object of this bill is not to take the mortgaged property from the trustee or the mortgagor and have it turned over to complainant as an indemnity for its future liability as a guarantor. This could only be done after it has paid the debt. McConnell v. Beatty, 34 Ark. 113. All it asks now is to preserve the mortgaged property from threatened destruction, or, in the language of Lord Redesdale, supra, "to prevent injury to it by interposing, before any actual injury has been suffered, by a bill which has sometimes been called a bill quia timet, in analogy to proceedings at the common law." In my opinion, the guarantor is entitled to protection of the property to which, upon payment of the debt, it would be entitled to subrogation, whenever it has shown that, unless prevented by the courts, that property is liable to be destroyed and the guarantor left without any security for his liability. McCormack's Adm'r v. Irvin, 35 Pa. 111. The rule would be different if complainant sought to deprive the creditor of the security. In such a case it must first make payment of the entire guaranty, and until that is done it has no right to claim the possession of the security. The wrongdoer in this case, according to the allegations of the bill, the city, cannot claim the same privileges which the mortgagor or mortgage creditor could.

But it is urged on behalf of the city, and numerous authorities are cited to sustain the contention, that the assignee or subrogee of a part of an entire security can maintain no action to recover the part due him. This is true, but the object of this bill is not to have the security split up, and thus subject the city to numerous actions instituted by different assignees or subrogees. The relief sought by the bill is to prevent the cancellation and repeal of the franchise of the water company, which is the most valuable part of the security conveyed for a debt guarantied by the complainant. Besides, the trustee, as well as the water companies, are parties to this action, and upon final hearing the rights of all the parties can be fully adjudicated and settled so as to prevent any further litigation.

The argument took a wide range and many other questions were ably presented by counsel, but the views taken by the court as herein expressed make it unnecessary to pass upon them at this stage of the proceeding.

The demurrer to the bill will be overruled, with leave to defendant to answer the bill within such time as counsel may agree upon; otherwise within 60 days.